In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2748

Sarah E. Frey, Kevin Enright,
and Protect Our Woods, Inc.,

Plaintiffs-Appellants,

v.

Environmental Protection Agency,
Christie Whitman, Administrator,
and Viacom, Inc.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP-00-0660-C-D/F--S. Hugh Dillin, Judge.

Argued January 12, 2001--Decided November 6, 2001


Before Easterbrook, Diane P. Wood, and
Williams, Circuit Judges.

Diane P. Wood, Circuit Judge.  This case
involves efforts to clean up three old
dumps in the Bloomington, Indiana, area,
that became contaminated with
polychlorinated biphenyls (PCBs), dioxin,
and other toxic chemicals over the years.
The federal Environmental Protection
Agency (EPA) and CBS Corporation
(formerly Westinghouse, and now Viacom--
but we will call it CBS as the parties
have done) reached agreement on a
remediation plan. The task of cleaning
and restoring toxic waste sites is a
complex one, and it is subject to
numerous federal and state laws. Some
Bloomington area residents, however,
including plaintiffs Sarah Frey, Kevin
Enright, and Protect Our Woods, Inc.
(POW), believe that the current plan does
not comply with federal or state law.
They sued under a number of those
statutes and Indiana common law, seeking
declaratory and injunctive relief, and
sought a temporary restraining order
(TRO) to prevent CBS from initiating
remediation work at one of the sites.
After briefing and a hearing on the TRO,
the district court issued an order
dismissing the plaintiffs' complaint in

its entirety for lack of subject matter jurisdiction. Plaintiffs appeal. For the reasons stated below, we reverse in part and affirm in part.

I

In 1983, the United States brought an enforcement action against CBS's predecessor, Westinghouse, under the Com prehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. sec. 9604 et seq., to force CBS to clean up two dump sites contaminated with PCBs. The State of Indiana intervened as a plaintiff. Two years earlier, the City of Bloomington, Indiana, had filed a separate suit in federal court against Westinghouse seeking cleanup of two other sites. The suits were consolidated, and the parties ultimately negotiated a consent decree that called for excavation and incineration of the toxic materials from the four named sites plus two more that were added later. Years later, in 1988, Frey sued in an effort to attack the earlier consent decree on a variety of procedural grounds, but with the ultimate goal (among others) of overturning the EPA's decision to use an incinerator to dispose of the waste. The district court dismissed the case for lack of subject matter jurisdiction and this court affirmed in Schalk v. Reilly, 900 F.2d 1091 (7th Cir. 1989).

In 1991, the Indiana State Legislature passed a law aimed at blocking the proposed incinerator. This obstacle pushed the formal parties--the EPA, the State of Indiana and its Department of Environmental Management, the City of Bloomington, the Bloomington Utilities Service Board, Monroe County, Indiana, and CBS--back to the negotiating table, where they began discussions to modify the consent decree. Under the direction of a special master appointed by the district court, and after a period of public comment, the EPA issued Record of Decision Amendments for the three dump sites that are now before us: Bennett's Dump, Neal's Landfill, and Lemon Lane Landfill. (The appellants discussed a fourth site, Neal's Dump, in their opening appellate brief, but that site was nowhere mentioned in their complaint and we thus agree with the appellees that any disputes with respect to Neal's Dump

are not properly before us.) Unlike the earlier consent decree, the new cleanup plans called for digging up only areas of highly contaminated soil--so-called "hot spots"--and then centralizing the contaminated soil and capping it. The plans also called for a variety of measures designed to prevent seepage and groundwater contamination at the sites. Notably, the new plans did not require the construction of an incinerator at any site.

The Frey group filed suit on April 20, 2000, challenging the modified remedies at all three sites under both federal and state law. They asserted federal jurisdiction under the citizen suit provisions of CERCLA, the Resource Conservation and Recovery Act, 42 U.S.C. sec. 6972(a), the Toxic Substances Control Act, 15 U.S.C. sec. 2619(a), the Clean Water Act, 33 U.S.C. sec. 1365(a), the Administrative Procedure Act, 5 U.S.C. sec.sec. 701-706, as well as under 28 U.S.C. sec. 1331, and, with respect to their Indiana public nuisance and air pollution claims, diversity (28 U.S.C. sec. 1332) and supplemental jurisdiction (sec. 1367).

Shortly after filing suit, the Frey parties moved for a temporary restraining order that would forbid initiation of cleanup activities at Lemon Lane Landfill. They asserted that the safeguards in place were inadequate to prevent large quantities of PCBs from being "volatilized" during the excavation process and deposited in surrounding residential areas, at great risk to the health of local citizens. The parties filed memoranda in support of and in opposition to the TRO, and the district court heard arguments that touched on the court's "subject matter jurisdiction" to hear the plaintiffs' Lemon Lane claims, among other subjects. No other site was included in the motion, and no other site was formally before the court. Two days after the hearing, on May 18, 2000, the district court issued its order denying the TRO and, without further briefing or argument, it dismissed plaintiffs' complaint in its entirety.

It is clear from the court's order that it entered a final judgment in the case for purposes of 28 U.S.C. sec. 1291. The judgment of dismissal talks only about

Lemon Lane, however, even though it discusses other procedural flaws without specifying to which sites they apply. The order concludes with the statement "[i]n sum, the Court dismisses this cause for lack of subject matter jurisdiction."

II

We review de novo the district court's dismissal for lack of subject matter jurisdiction. Sapperstein v. Hager, 188 F.3d 852, 855 (7th Cir. 1999). The first problem we encounter is a consequence of the manner in which the court addressed this issue. Not only did it raise the point on its own (perfectly permissible, in itself, for a true jurisdictional problem, see Wellness Community-Nat'l v. Wellness House, 70 F.3d 46, 51 (7th Cir. 1995)), but it also went forward with its ruling and dismissal without giving any notice to the plaintiffs that it was considering doing so. We have warned that "sua sponte dismissals without prior notice or opportunity to be heard are hazardous" and that "unless the defect is clearly incurable a district court should grant the plaintiff leave to amend, allow the parties to argue the jurisdictional issue, or provide the plaintiff with the opportunity to discover the facts necessary to establish jurisdiction." Joyce v. Joyce, 975 F.2d 379, 386 (7th Cir. 1992); see also Shockley v. Jones, 823 F.2d 1068 (7th Cir. 1987). Unless our review of the plaintiffs' complaint reveals incurable defects, we therefore must remand to the district court for further proceedings.

A.  Federal Claims

Although the Frey group relied on a number of federal statutes for their federal claims, they concede that plaintiffs challenging activities covered by CERCLA's removal or remedial action provisions, see 42 U.S.C. sec. 9601(25), must satisfy the requirements of CERCLA sec. 113(h), 42 U.S.C. sec. 9613(h), before a court can entertain the case. Schalk, 900 F.2d at 1097. This is not, strictly speaking, a problem of "subject matter jurisdiction" in the sense of the federal court's competence under Article III. See United States v. Tarkowski, 248 F.3d 596 (7th Cir. 2001). It is instead a question about the prerequisites that the

plaintiffs must satisfy to obtain relief. A person who does not comply with sec. 113(h) will not prevail, but the court's power to adjudicate the case is clear, and a dismissal should be predicated on Federal Rule of Civil Procedure 12(b)(6), not on 12(b)(1). "A standard rule in considering jurisdictional challenges is that when the court's jurisdiction and the claim for relief are predicated on the same federal statute but the basis for relief is subsequently found to be inapplicable, the district court should not dismiss the case under Rule 12(b)(1), but rather proceed as if jurisdiction exists and determine the merits of the claim under Rule 12(b)(6)." Central States, Southeast and Southwest Areas Health and Welfare Fund v. Neurobehavioral Associates, 53 F.3d 172, 174 (7th Cir. 1995). This distinction matters not only because a dismissal for want of jurisdiction does not preclude a suit from being refiled in a proper court, but also because the district court finds jurisdictional facts in connection with a proper motion under Rule 12(b)(1), while disputed facts are treated quite differently for purposes of Rule 12(b)(6), for which the court indulges every reasonable presumption in favor of the complainant.

In our view, what we have here is the same kind of problem as the one the Supreme Court considered in Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998), where the Court observed that jurisdiction is "a word of many, too many meanings," id. at 90 (citation omitted), and concluded that the elements of the cause of action in the statute before it went to the merits of the claim, not to jurisdiction. We note as well that sec. 113(h) itself does not speak of "subject matter" jurisdiction; it merely uses the term "jurisdiction" in one of the more limited senses to which the Supreme Court was alluding in Steel Co. See also Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 950-51 (1997) (amendment to qui tam statute essentially creates a new cause of action; even though amendment was phrased in "jurisdictional" terms, the new claim is subject to normal retroactivity rules). Following the guidance of Steel Co., which was handed down well after Schalk, we will avoid the inaccurate term "subject matter jurisdic

tion" in the remainder of this opinion and speak instead of the plaintiffs' ability to state a claim.

The relevant portion of CERCLA sec. 113(h) states:

No Federal court shall have jurisdiction under Federal law . . . to review any challenges to removal or remedial action selected under section 9604 of this title . . . in any action except one of the following . . . .

. . .

(4) An action under section 9659 of this title (relating to citizen suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to removal where remedial action is to be undertaken at the site.

We have interpreted this language to mean that a federal court may not hear a citizen suit challenging a CERCLA removal or remedial action until that action has been "taken" or "secured." In other words, the removal or remedial action must be complete. Schalk, 900 F.2d at 1095.

In dismissing the plaintiffs' suit, the district court found that removal and remediation activities at Lemon Lane Landfill were planned but not yet complete. At the time of the TRO hearing, this was so. (According to the plaintiffs, planned removal and remediation activities have since been completed at the site.) The court made no factual findings, however, regarding what kind of removal and remedial actions were planned for and had been taken at Neal's Landfill and Bennett's Dump. This presents a problem. If the district court had been correct that this was a problem of subject matter jurisdiction, then it would have erred because the record is missing crucial findings of "jurisdictional" fact. In the absence of such findings, we would be unable to assess whether plaintiffs are correct when in their complaint they assert that, for purposes of sec. 113(h), removal and remediation are in fact "complete" at

those sites. See Tarpley v. Jeffers, 96 F.3d 921 (7th Cir. 1996) (remanding for findings of jurisdictional fact on whether factual requirements for claim were met to establish jurisdiction). Because the real problem is instead a potential failure to state a claim, two questions are pertinent: first, we must construe the legal meaning of the word "complete" in the statute, and second, we must decide whether any set of facts consistent with the complaint would allow plaintiffs to recover. The plaintiffs' right to proceed to the summary judgment stage and possibly beyond depends on the outcome of those inquiries.

Conceptualizing the issue as one of subject matter jurisdiction, the Frey group has urged us to remand the case to the district court for proper jurisdictional findings. Presumably, a remand for further proceedings on any other ground would suit them just as well. The appellees would naturally prefer a straightforward affirmance. A broad reading of the appellees' argument is that it is clear from the record that something related to the PCB removal and remediation plan remains to be done at each of the sites. This is enough, they argue, to preclude a suit over any aspect of the EPA's chosen remediation plan, regardless of how speculative that "something" may be or how remote from the challenged completed actions. In fact, the appellees are presenting an argument over the meaning of the term "complete" in the statute. "Complete" could mean not only that the planned cleanup procedures have been carried out but also that all subsequent monitoring has ceased. On the other hand, it might mean, more modestly, that the remediation measures are finished, but that occasional visits of environmental authorities in the future could occur to ensure their effectiveness, or even that particular stages of the remedial plan have reached completion.

If it means the first of these, the appellees may well be correct; but if it means the second or third, then the need for further proceedings to clarify the record is apparent. In our view, the middle ground is most consistent with the statute. It is important that the statute itself speaks of "removal where remedial action is to be undertaken at the site."

The remedial action to which it refers is logically different from a later effort to ensure that the action was effective. The Frey group goes further and argues for the third possibility, namely, that the reference to "remedial action" means only a stage of a broader remediation plan. They have some support for this interpretation in both the legislative history of the statute and earlier decisions. See H.R. Conf. Rep. No. 99-962, at 224 (1986) ("[T]he phrase 'removal or remedial action taken' [in sec. 113(h)(4)] is not intended to preclude judicial review until the total response action is finished if the response action proceeds in distinct and separate stages."); Clinton County Commissioners v. EPA, 116 F.3d 1018, 1023 (3d Cir. 1997) (citing "separate stages" legislative history with approval); Neighborhood Toxic Cleanup Emergency v. Reilly, 716 F.Supp. 828, 834 (D.N.J. 1989) (applying separate stages analysis); but see Hanford Downwinders Coalition, Inc. v. Dowdle, 71 F.3d 1469 (9th Cir. 1995) (recognizing possibility that sec. 113(h) might forever preclude judicial review). But we are concerned that this reading ignores the lack of a qualifier on the phrase "remedial action." The statute does not say "a remedial action," or "a stage of a remedial plan." Instead, it calls flatly for restraint from suit when "remedial action" (period) remains to be done. We thus reject the "staged" approach plaintiffs have suggested.

Because we also see a distinction between the active steps designed to clean up a site and later measures designed to monitor success, we do not believe that this reading would have the undesirable consequence of converting sec. 113(h) into a silent prohibition on judicial review. See North Shore Gas Co. v. EPA, 930 F.2d 1239, 1245 (7th Cir. 1991) (suggesting sec. 113(h) limitation on the timing of judicial review ought not extinguish judicial review). Nor does our reading suggest that sec. 113(h) precludes a lawsuit merely because there is a hypothetical possibility that later monitoring might lead the EPA or the state authorities to devise a follow-up remediation plan. The key word there is "hypothetical." One can always imagine some future action, especially in the area of environmental regulation, but the

time limits in sec. 113(h) are geared to concrete, existing, remedial measures; not measures that might be devised at some future date.

The defendants have also invited us to comb the available record and take judicial notice of documents which, they argue, establish the scope of the planned removal and remediation activities at the sites, what has thus far been completed, and the fact that more remains to be done. We decline this invitation to make factual determinations that are properly the province of the district court.

The Frey group has raised certain constitutional claims for the first time on appeal. They contend that if sec. 113(h) indefinitely precludes judicial review of arbitrary and capricious agency actions that result in injuries to their health and property then the statute effectuates an unconstitutional deprivation of liberty and property without due process. We rejected similar arguments in Schalk, 900 F.2d at 1098, and we find no reason to address them further here either. First, of course, the lack of any such constitutional arguments in the complaint is an obvious problem. Perhaps plaintiffs can be forgiven for that omission, however, because of the unexpected way in which the district court's ruling arose and their lack of any opportunity to amend the complaint. In light of our interpretation of the statute, however, we think it unnecessary to speculate about this constitutional issue. Perhaps there is no claim to be made any more; perhaps plaintiffs will try to renew some modified claim before the district court. Either way, there is nothing for this court to discuss.

For these reasons, and because we do not find any incurable defects in the plaintiffs' federal law claims with respect to Bennett's Dump and Neal's Landfill, we reverse the district court's dismissal of those claims and remand for further proceedings. The district court should also revisit its conclusions about Lemon Lane Landfill, both in light of our decision on the scope of sec. 113(h) and in light of any actions that have been taken at the site since the court's earlier judgment.

B.  State Law Claims

The district court also dismissed plaintiffs' state law air pollution and public nuisance claims for lack of subject matter jurisdiction, and it added that plaintiffs' complaint in any event failed to state a claim for a public nuisance under Indiana law. The court concluded that because it lacked federal question jurisdiction over all the federal claims of the plaintiffs, it could not exercise supplemental jurisdiction. It further interpreted sec. 113(h) to preclude the exercise of diversity jurisdiction over state law claims prior to the completion of removal and remediation activities at each site. The court went on to say that even if it had subject matter jurisdiction over the state law claims, plaintiffs' claims would be dismissed because they failed to exhaust administrative remedies before suing the EPA in tort and failed to allege a unique injury as required by Indiana's public nuisance statute.

Even if we agree with the Frey group that the district court was premature in dismissing their federal law claims under CERCLA sec. 113(h) (an action that caused the dismissal of the state claims as well), we can affirm the court's dismissal of the state law claims to the extent that they suffer from other incurable defects.

We consider first the state law claims brought against the federal defendants, the EPA and its Administrator (which we treat as claims against the agency alone). The Federal Tort Claims Act (FTCA), 28 U.S.C. sec. 2671 et seq., requires the exhaustion of administrative remedies prior to suing the federal government in tort. 28 U.S.C. sec. 2675(a). A number of decisions treat a failure to exhaust administrative remedies as something that deprives the district court of subject matter jurisdiction over the claim. Garcia v. Meza, 235 F.3d 287, 290 (7th Cir. 2000); Brady v. United States, 211 F.3d 499, 502 (9th Cir. 2000); Burchfield v. United States, 168 F.3d 1252 (11th Cir. 1999). We are not so sure that this is technically correct, although for this part of the case the distinction has no practical effects. At bottom, the rationale for insisting on strict

compliance with the FTCA stems from the fact that the statute creates a limited waiver from the sovereign immunity from suit that the United States would otherwise enjoy. In other contexts, the Supreme Court has held that a failure to comply with statutory limits on a waiver of sovereign immunity is not jurisdictional in nature. See Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 93-95 (1990). Following that lead, this court has held that sovereign immunity is an aspect of the statutory right to relief, rather than of the court's jurisdiction. See United States v. Cook County, 167 F.3d 381, 388-89 (7th Cir. 1999). Given this line of cases, it might be appropriate to revisit the jurisdictional language in decisions such as Garcia at some point in the future. For the reasons we now explain, however, we have no need to do so here.

In the present appeal, the plaintiffs have not disputed the district court's finding that they did not comply with the requirements of 28 U.S.C. sec. 2675 prior to filing their state law claims against the EPA. Either way we look at it-- jurisdictionally or in terms of the statement of a claim--the failure to exhaust under 28 U.S.C. sec. 2675 constitutes an inherent defect in the plaintiffs' state law claims against the EPA and those claims were thus properly dismissed. It is also worth observing that the FTCA's exception for the exercise of discretionary functions or duties, 28 U.S.C. sec. 2680(a), would pose a formidable obstacle to any such claim. If the plaintiffs were thinking instead of a takings claim, the first problem is that such a claim arises under the federal constitution, not state law; the second is that a federal takings claim where the amount exceeds $10,000 (as this one might) belongs in the Court of Federal Claims, not the district court. See 28 U.S.C. sec.sec. 1346(a)(2), 1491. For all these reasons, therefore, the end result ofdismissal of the plaintiffs' state law claims against the federal defendants was correct.

There is another independent reason why plaintiffs cannot assert a state-law based claim against the EPA. They did not satisfy the prerequisites for such a claim as a matter of state law. Under Indiana law, enforcement of air pollution

control statutes is generally the province of the Department of Environmental Management and the Air Pollution Control Board. See Ind. Code Ann. sec. 13-17-1-1. Indiana permits individuals and organizations to file suit on behalf of the state to enforce its environmental laws, provided certain statutory prerequisites are satisfied. Ind. Code Ann. sec. 13-30-1-1 et seq. (formerly codified as sec. 13-6-1-1 et seq.). Where a party bringing suit under sec. 13-30-1-1 fails to satisfy the statutory prerequisites, Indiana courts hold that there is no subject matter jurisdiction over the claim. Sekerez v. Youngstown Sheet & Tube Co., 337 N.E.2d 521, 526 (Ind. App. 1975). The only requirement relevant to this case is that a suit under sec. 13-30-1-1 may not be brought if the state is "diligently pursuing" a civil action against the alleged polluter. Ind. Code Ann. sec. 13-30-1-3(a)(2). Drawing on federal court interpretations of the Resource Conservation and Recovery Act, the Indiana courts have interpreted "diligent pursuit" as "participation" by the state in the cleanup activity at issue. State ex rel. Prosser v. Indiana Waste Sys., Inc., 603 N.E.2d 181 (Ind. App. 1992).

The State of Indiana is a plaintiff party to the consent decree that the plaintiffs challenge in this case. The state is thus diligently pursuing the cleanup of the three sites, which means that the plaintiffs are precluded from bringing an air pollution enforcement action under sec. 13-30-1-1. Independently of whether the district court could, as a matter of federal law, exercise jurisdiction over plaintiffs' state law air pollution claim, the fact that the plaintiffs cannot satisfy the state statutory requirements leads to the conclusion that the claim must be dismissed. See Ragsdale v. Turnock, 941 F.2d 501, 509 (7th Cir. 1991) (both Article III and statutory standing requirements must be satisfied).

The only claim remaining is the plaintiffs' allegation that CBS violated Indiana's public nuisance statute. We agree with the defendants that because plaintiffs named both the EPA and CBS as defendants to their public nuisance claim, the parties were not completely diverse and the district court could not

exercise diversity jurisdiction over the claim. The EPA, which is part of the federal government, is not a "citizen of a state," and thus its presence destroys complete diversity. See General Ry. Signal Co. v. Corcoran, 921 F.2d 700 (7th Cir. 1991) (federal agency cannot be sued in diversity). Because there is no diversity jurisdiction in any event, we have no occasion here to reach the question whether CERCLA sec. 113(h) precludes federal courts from exercising subject matter jurisdiction over state law diversity claims that attack the adequacy of removal and remedial actions. If, on remand, the district court finds that the case may proceed under any of the various federal theories, it should revisit the question of the appropriateness of retaining supplemental jurisdiction over the public nuisance claim. See 28 U.S.C. sec. 1367(c).

Defendants have one last argument: they assert that even if the court could exercise supplemental jurisdiction over the claim, the Frey plaintiffs lack standing as a matter of Indiana law to pursue the public nuisance charge. To have standing to bring a public nuisance claim in Indiana, a plaintiff must suffer an injury "different in kind and not merely in degree" from the one suffered by the general public. Blair v. Anderson, 570 N.E.2d 1337, 1340 (Ind. App. 1991). Moreover, they contend, Indiana courts would not consider an organization like POW a "person entitled to sue" under the public nuisance statute unless it has itself suffered a distinct injury. See Union Township Residents Ass'n v. Whitley County Redevelopment Comm'n, 536 N.E.2d 1044 (Ind. App. 1989); Robertson v. Board of Zoning Appeals, 699 N.E.2d 310, 316 (Ind. App. 1998). An organization like POW cannot rely on the injury of one of its members. Medical Licensing Board of Indiana v. Indiana State Chiropractic Assoc., 373 N.E.2d 1114, 1116 (Ind. App. 1978). To the extent this argument really goes to the merits of their right to recover under Indiana law, the district court will be able to consider whether these plaintiffs have a proper claim for relief on remand. To the extent it reflects more prudential limitations on the Indiana courts, it does not apply to a federal court exercising supplemental jurisdiction. The federal court operates under its own rules of standing, both for

Article III purposes and for prudential purposes. See Illinois ex rel. Ryan v. Brown, 227 F.3d 1042, 1045 (7th Cir. 2000). The district court should give further consideration to this issue on remand, again as warranted by its decision on the principal federal claims.

III

In summary, we Reverse the district court's dismissal of the plaintiffs' federal law claims with respect to Bennett's Dump and Neal's Landfill and remand for further proceedings. We Affirm the district court's dismissal of the plaintiffs' state law claims with the exception of the public nuisance claim against CBS, which is also remanded for further proceedings consistent with this opinion.