*8 ORDER (Final Judgment)
TODD R. MATHA, Chief Judge.
INTRODUCTION
The Court must determine whether the plaintiff maintained a property interest in her former position, as distinguished from employment in general, which rendered a disciplinary demotion constitutionally impermissible in the absence of minimum procedural due process protection. The Court holds that the Ho-Chunk Nation PERSONNEL POLICIES & PROCEDURES MANUAL (hereinafter Personnel Manual) created no such property interest. The Court also holds that the plaintiff failed to adequately rebut the asserted grounds for the demotion. Furthermore, the plaintiff could not have secured an award of money damages without an express waiver of sovereign immunity.
PROCEDURAL HISTORY
The Court recounts the procedural history in significant detail within a previous judgment. Order (Determination upon Remand), CV 04-72 (HCN Tr. Ct„ Aug. 15, 2008) at 1-3. For purposes of this decision, the Court notes that the plaintiff, Joyce L. Warner, by and through Attorney Timothy Harjo, sought and received an extension of the post-trial briefing schedule. Order (Granting Continuance), CV 04-72 (HCN Tr. Ct., Sept. 17, 2008). Consequently, the parties filed timely legal memoranda on October 10, 2008. See Mem., CV 04-72 (Oct. 13, 2008);[1] Defs.’ Post-Trial Br., CV 04-72 (Oct. 10, 2008). *9 Neither party chose to file a responsive brief on or before October 24, 2008. Order (Granting Continuance).
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Art. V—Legislature
Sec. 2. Powers of the Legislature. The Legislature shall have the power:
(a) To make laws, including codes, ordinances, resolutions, and statutes;
(f) To set the salaries, terms and conditions of employment for all government personnel;
Art. VII—Judiciary
Sec. 5. Ju risdiction of the Judiciary.
(a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in the Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be construed to be a waiver of the Nation’s sovereign immunity.
Art. X—Bill of Rights
Sec. 1. Bill of Rights.
(a) The Ho-Chunk Nation, in exercising its powers of self-government, shall not:
(8) deny to any person within its jurisdiction the equal protection of its law's or deprive any person of liberty or property without the due process of law;
Art XII—Sovereign Immunity
Sec. 1. Immunity of Nation front Suit The Ho-Chunk Nation shall be immune from suit except to the extent that the Legislature expressly waives its sovereign immunity, and official and employees of the Ho-Chunk Nation acting within the scope of their duties or authority shall be immune from suit.
Sec. 2. Suit Against Officials and, Employees. Officials and employees of the Ho-Chunk Nation who act beyond the scope of their duties or authority shall be subject to suit in equity only for declaratory and non-monetary injunctive relief in Tribal Court by persons subject to its jurisdiction for purposes of enforcing rights and duties established by this constitution or other applicable laws.
HO-CHUNK NATION PERSONNEL POLICIES AND PROCEDURES MANUAL (updated Jan. 22, 2004)
Introduction
General Purposes: [p. 2]
⅜ ⅜ ⅜ ⅜
The Ho-Chunk Nation hereby asserts that it has the right to employ the best qualified persons available; that the continuation of employment is based on the need for work to be performed, availability of revenues, faithful and effective performance, proper personal conduct, and continuing fitness of employees; and that all employees are temiinable for cause unless otherwise specified in writing as a prescribed employment term, with the exception of at-will employees. (RESOLUTION 1/22/04A)
⅜ ⅛ ⅜ ⅝
Ch. 6 Compensation and Payroll Practices
Compensation upon Promotion or Demotion [p. 171
[[Image here]]
*10 Permanent employees who are demoted to a position with a lower pay rate or range will be reduced to the rate or range rate in the lower position as follows:
N on-disciplinary demotions will be assigned to that pay rate the employee would have achieved in the lower position if the employee’s service had been continuous in the lower position based on his or her original permanent hire elate, which will be retained. Upon the effective date of demotion, the employee will be assigned a new annual review date and will be placed on a ninety (90) day performance probation with a possible merit increase. Only employees that have worked for the Nation for over ninety (90) days and have a good current evaluation will be demoted for non-disciplinary reasons. (RESOLUTION 03/23/99G)
Disciplinary demotions will be assigned to the base rate of the new position. Upon the effective date of demotion, the employee will be assigned a new annual review date and will be placed on a ninety (90) day performance probation with a possible merit increase.
Ch. 12—Employment Conduct, Discipline, and Administrative Review
Types of Discipline [pp. 59-60]
Depending on the nature of circumstance of an incident, discipline will normally be progressive and bear a reasonable relationship to the violation. The types of discipline that may occur are as follows in general, order of increasing formality and seriousness:
A.Verbal Reprimand
A verbal statement by the supervisor to an employee, usually pointing out an unsatisfactory element of job performance, is intended to be corrective or cautionary. A verbal reprimand informally defines the area of needed improvement, sets up goals for the achievement of improvement, and informs the employee that failure to improve may result in more serious actions. The supervisor shall record the date and content of the reprimand. The record shall be placed in the employee’s personnel file.
B. Written Reprimand
This is the first level of formal discipline. The written reprimand is issued by the supervisor with approval of the Department Director, and a copy to the Personnel Office for placement in the employee’s personnel file.
C. Suspension
An employee may be suspended from work without pay for up to five working days by authority of the Department Director. Suspensions of a longer duration require approval by the Personnel Director. Under no circumstances will a suspension exceed 10 working days.
D. Discharge for Misconduct
Employees should be aware that their employment relationship with the Ho-Chunk Nation is based on the condition of mutual consent to continue the relationship between the employee and the Nation. Therefore, the employee or Nation is free to terminate the employment relationship for misconduct, at any time. Recommendations to discharge an employee are to be made to and authorized by the Department Director.
Initiating Discipline: Considerations and, Notice [p. 60]
Supervisory and management personnel should be guided in their consideration of *11 disciplinary matters by the following illustrative, but not exclusive, conditions.
* The degree of severity of the offense
* The number, nature, and circumstance of similar past offenses
* Employee’s length of service
* Provocation, if any, contributing to the offense
⅜ Previous warnings related to the offense
* Consistency of penalty application
⅜ Equity and relationship of penalty to offense
Disciplinary notice to regular employees should, as a general rule, contain the following information:
* A statement of the disciplinary action to be taken and its effective date
* A statement of the reason(s) for imposing the discipline and the nature of the violation
* Attachment of any supporting material or evidence where appropriate
* What the worker has to do to improve Service of disciplinary notice will be deemed to have been made upon personal presentation, or by depositing the notice, postage prepaid, in the U.S. mail, addressed to the employee’s last known address on tile.
ENTERPRISE EMPLOYEES ONLY [p. 62]
Matters covered by Administrative Review System: Eligible employees who have complaints, problems, concerns, or disputes with another employee, the nature of which causes a direct adverse effect upon the aggrieved employee, may initiate an administrative review' according to established procedures. Such matters have to do with: specific working conditions, safety, unfair treatment, disciplinary actions (except verbal reprimands), compensation, job classification, reassignment, any form of alleged discrimination, a claimed violation, misinterpretation, or inequitable application of these policies and procedures.
Hearing Levels for Enterprise: [pp. 62-63]
Probationary or Limited Term Employees my [sic] not grieve on any matters.
1. Verbal warnings may not be grieved, but the employee may add a written response to their personnel file.
2. Performance Evaluations and written reprimands are to be grieved in sequence to:
Level 1 Supervisor and General/Facility Manager
Level 2 Executive Director
3. Suspensions are to be grieved in sequence to;
Level 1 Supervisor and General/Facility Manager
Level 2 Executive Director Level 3 Trial Court
4. Terminations are to be grieved in sequence to:
Level 1 Supervisor and General/Facility Manager
Level 2 Executive Director
Level 3 Trial Court
Tribal Co-mi Review: [p. 63]
Judicial review of any appealable claim may proceed to the HoChunk [sic ] Nation Tribal Court after the Administrative Review Process contained in this Chapter has been exhausted. The Ho-Chunk [sic ] Nation Rules of Civil Procedure shall govern any judicial review of an eligible administrative grievance shall file [sic] a civil action with the Trial Court within thirty (30) days of the final administrative grievance review decision.
*12 Limited Waiver of Sovereign Immunity [p. 64]
The HoChunk [sic.] Nation hereby expressly provides a limited waiver of sovereign immunity to the extent that the Court may award monetary damages for actual lost wages and benefits established by the employee in an amount not to exceed $10,000, subject to applicable taxation. Any monetary award granted under this Chapter shall be paid out of the departmental budget from which the employee grieved. In no event shall the Trial Court grant any monetary award compensating an employee for actual damages other than with respect to lost wages and benefits The Trial Court specifically shall not grant any monetary award against the Nation or its officials, officers, and employees acting within the scope of their authority on the basis of injury to reputation, defamation, or other similar invasion of privacy claim; nor shall the Trial Court grant any punitive or exemplary damages.
The Trial Court may grant equitable relief mandating that the HoChunk [sic ] Nation prospectively follow its own laws, and as necessary to remedy any past violations of tribal law. Other equitable remedies shall include, but not be limited to: an order of the Court to the Personnel Department to reassign or reinstate the employee, a removal of negative references from the personnel file, an award of bridged service credit, and a restoration of seniority. Notwithstanding the remedial powers noted in the Resolution, the Court shall not grant any remedies that are inconsistent with the laws of the HoChunk [sic ] Nation. Nothing in this Limited Waiver or within the Personnel Policies and Procedures Manual shall be construed to grant a party any legal remedies other than those included in the section. (RESOLUTION 06/09/98A)
Ch. 14 Definitions [pp. 69, 72]
Demoted: A change in employment status i*esulting in:
1. movement from one position to another that requires fewer minimum qualifications and is assigned a lower pay range; or
2. movement from one pay step to a lower pay step within the same salary range assigned to a particular position.
Discharge: Involuntary separation or termination of employment.
Suspension: The temporary removal of an employee from service, without pay, for disciplinary reasons and for a specified period of time.
HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 42. Scheduling Conference.
Scheduling Order. The Court may enter a scheduling order on the Court’s own motion or on the motion of a party. The Scheduling Order may be modified by motion of a party upon showing of good cause or by leave of the Court.
Rule 58. Amendment to or Relief from Judgment or Order.
(A) Relief from Judgment. A Motion to Amend or for relief from judgment, including a request for a new trial shall be made within ten (10) calendar days of the filing of judgment. The Motion must be based on an error or irregularity that prevented a party from receiving a fair trial or a substantial legal error that affected the outcome of the action.
(B) Motion for Reconsideration. Upon motion of the Court or by motion of a party made not later than ten (10) calendar days after entry of judgment, the Court may amend its findings or conclusions or make additional findings or con- *13 elusions, amending the judgment accordingly. The motion may be made with a motion for a new trial. If the Court amends the judgment, the time for initiating an appeal commences upon entry of the amended judgment. If the Court denies a motion filed under this Rule, the time for initiating appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) days after the filing of such motion, and the Court does not decide a motion under this Rule or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating the appeal from judgment commences in accordance with the R ules of Appellate Procedure.
(C)Motion to Modify. After the time period in which to file a Motion to Amend of a Motion for Reconsideration has elapsed, a party may file a Motion to Modify with the Court. The Motion must be based upon new information that has come to the party’s attention that, if true, could have the effect of altering or modifying the judgment. Upon such motion, the Court may modify the judgment accordingly. If the Court modifies the judgment, the time for initiating an appeal commences upon entry of the modified judgment. If the Court denies a motion filed under this Rule, the time for initiating an appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) calendar days after the filing of such motion, and the Court does not decide the motion or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(D) Erratum Order or Re-issuance of Judgment. Clerical errors in a Court record, including the Judgment or Order, may be corrected by the Court at any time.
(E) Grounds for Relief. The Court may grant relief from judgments or orders on motion of a party made within a reasonable time for the following reasons: (1) newly discovered evidence which could not reasonably have been discovered in time to request a new trial; (2) fraud, misrepresentation or serious misconduct of another party to the action; (3) good cause if the requesting party was not personally served in accordance with Rule 5(c)(l)(a)(i) or (ii), did not have proper service and did not appear in the action; or (4) the judgment has been satisfied, released, discharged or is without effect due to a judgment earlier in time.
Rule 61. Appeals.
Any final Judgment or Order of the Trial Court may be appealed to the Supreme Court. The Appeal must comply with the Rules of Appellate Procedure, specifically Rules of Appellate Procedure, Rule 7, Right of Appeal. All subsequent actions of a final Judgment or Trial Court Order must follow the Rides of Appellate Procedure.
Rule 84. Business Hours.
The Court is open from 8:00 a.m. to 4:30 p.m. Monday through Friday, with the exception of legal holidays, closings due to inclement weather, or other unforeseen circumstances. For a document to be timely filed, it must be received and stamped by the Clerk of Court no later than 4:30 p.m. on or before the due date.
FINDINGS OF FACT
1. The Court incorporates by reference Findings of Fact 1-8 enumerated in a *14 prior decision Order (Determination upon Remand,) at 7-8.
2. In the initial pleading, the plaintiff recounts the events surrounding her May 23, 2004 demotion as follows:
Cindy Spring, the Administrative Assistant at DeJope Bingo, called to let me know that Ona Garvin, Interim Director of Gaming had called and asked that I return her call. On 05-20-04 at 10:58 A.M., I returned Ona Garvin’s call-I was on sick leave from May 13, 2004 through May 21,2004.
Ona Garvin stated that a management decision had been made to move me from DeJope Bingo as Executive General Manager to Ho-Chunk Bingo as Gaming Hall Manager under Robert Mudd, General Manager of Ho-Chunk Casino effective Sunday, May 23, 2004. This management decision was a demotion for me from Executive General Manager to Gaming Hall Manager. No information was given to me why I was being moved....
As of this date, I have not received any status changes, memos, letters or formal written forms in regard to my demotion. I would like to know why I have not received any written documentation.
CompL, CV 04-72 (July 20, 2004), Attach. 1 at 2, 4; see also Defs. ’ Answers to PI. ⅛ First Set of Interrogs., CV 04-72 (Nov. 28, 2007) at 8.[2]
3. The defendants responded in part: “At no time did the Defendants wrongfully demote the Plaintiff.... The plaintiff was demoted properly according to HCN Policies and Procedures Manual, Ch. 6, Pg. 16, N'on-disciplinary demotions. Effective on May 23, 2003, the Plaintiff was non-disei-plinarily demoted from Executive Manager of DeJope Bingo to Gaming Hal Manager of Ho-Chunk Casino and Bingo.” Defs.’ Answer, CV 04-72 (Sept. 1, 2004) at 2.
4. Upon remand, the Court determined to re-establish each scheduling timeframe, including the discovery period, as if the plaintiff had filed a new case. Scheduling Order, CV 04-72 (HCN Tr. Ct„ Sept. 20, 2007). This action reflected the wishes of the parties. Order (Determination upon Remand) at 2 n.2. The plaintiff subsequently sought and received several modifications to the Scheduling Order. Id. at 2-3; see also Scheduling Order at 1 (citing HCN R. Civ. P. 42).
5. Regarding the disciplinary motivation for the demotion, the plaintiff asserts that “[n]ot until November of 2008, some four years later did the Defendant’s provide any reason or explanation for Plaintiffs employment status from Executive Manager of Dejope [sic ] Bingo to Bingo Hall Manager at Rainbow Casino.” Mem, at 14 (citing Defs. ’ Answers to PI. ⅛ First Set of Interrogs. at 2-4). On November 28, 2007, the defendants offered the following clarification for the first time:
George Lewis, former President, and James Webster, former Executive Director of Business, were the decision makers [sic ] regarding Ms. Warner’s various transfers which included her demotion from the Executive Manager of DeJope Gaming. The decision was made on May 19, 2004 and executed commencing on May 19, 2004 and continued until May 23, 2004 when it became effective.... Ms. Warner was *15 asked to present a budget for the facility at a meeting on March 23 and 24, 2004. During the meeting it became readily apparent that someone other than Joyce Warner had prepared the budget and that Ms. Warner was unaware of its contents or how it worked. Ms. Warner did not appropriately handle administrative matters.... The plaintiff was demoted for inadequate performance as an administrator.
Defs.’ Answers to PL’s First Set of Inter-rogs. at 2-4. Shortly thereafter, former Executive Director Webster supplemented the above response, stating:
In addition to the lack of knowledge regarding ongoing finances of Dejope [sic ], the facility was physically deteriorating and wasn’t being properly cared for or maintained. Joyce had no plans for improving the situation nor did she notify the Executive Director of Business or anyone in the business department that the financial and physical conditions of DeJope needed immediate attention.
The Director of Gaming informed me that Joyce’s secretary' was responsible for what work was done at DeJope and if that person wasn’t there to help Joyce, then Joyce would not be able to do the job. Joyce took the philosophy of surrounding yourself with good people to the extreme. Joyce’s performance at the budget review meeting is indicative of her management capabilities for a facility as large as DeJope.
I felt the Nation’s best financial interest would be served by allowing Joyce to use her experience and focus her attentions strictly on a bingo venue.
Defs. ’ Supplemental Answers to PI. ⅛ First Set of Intermgs., CV 04-72 (Nov. 30, 2007).
6.Despite the foregoing responses, the plaintiff sought no extension of the discovery period for purposes of exchanging further interrogatories or scheduling depositions.
7. The plaintiff addressed the charge that she failed to “notify the Executive Director of Business .. . that the financial and physical conditions of DeJope needed immediate attention,” id., claiming that she described these deficiencies in detail within an initial report delivered to defendant Webster. Trial (LPER at 48, May 15, 2008, 02:31:14 CDT). The plaintiff, however, submitted no such report into evidence.
8. Each of the plaintiffs witnesses that testified about the reasons for the demotion joined in the above characterization. Id. at 29, 33, 35, 42, 43, 11:39:21, 11:51:07, 12:01:55, 12:34:02, 12:34:36 CST. At best, former Executive Administrative Assistant Cindy M. Whitehorse merely testified that she “assisted” the plaintiff with budget preparation. Id. at 21,11:13:52 CST.
9. Supervisory staff promoted the plaintiff on November 3, 2003, in hopes that her managerial style would improve financial and personnel conditions at De-Jope Bingo. Id, at 42, 12:33:22 CST; see also Trial Ex. A at 1. After six (6) months, supervisory staff demoted the plaintiff since each individual perceived a lack of tangible improvement attributable to the plaintiffs actions.
10. Processing the plaintiffs demotion as a non-disciplinary measure enabled the plaintiff to receive the “pay rate [she] would have achieved in the lower position if the [her] service had been continuous in the lower position based on ... her original permanent hire date.” Pers Manual, Ch. 6 at 17. Otherwise, the plaintiff would have received “the base rate of the new position.” Id.
11. The plaintiff incorporated the earlier pleadings into her most recent amended pleading PL’s Second Am. Compl, CV 04-72 (Nov. 30, 2007) at 4, 6. The defendants *16 have repeatedly asserted the defense of sovereign immunity since the first responsive pleading. Defs. ’ Answer at 3.
DECISION
The Court afforded the parties an opportunity to brief the issues relevant to the Court’s resolution of this case. The principal issue under consideration is one of first impression. The Court has never determined whether an employee must receive procedural due process protection in relation to a demotion. Likewise, the Court has never considered whether the limited waiver of sovereign immunity enables a demoted employee to receive lost wages. The Court shall address each identified issue in turn.
I. Does an employee maintain a property interest in his or her position in addition to the recognized property interest in employment?
The Court has previously provided a discussion relating to procedural due process, and, therefore, refers the parties to that jurisprudential examination. Order (Denying PL’s Mot. for Summ. J.), CV 04-72 (HCN Tr. Ct., Sept. 11, 2006) at 14-17. For present purposes, the Court will simply reiterate the universally accepted proposition that “ ‘property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent sourceId. at 16 (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). The plaintiff acknowledged this common understanding within her post-trial analysis of procedural due process. Mem. at 6 (citing Roth, 408 U.S. at 577, 92 S.Ct. 2701). The plaintiff then proceeds to assert that she “need only show that [the] Ho-Chunk Nation Constitution and the Personnel Policy Manual combine to create an entitlement to continued employment.” Id. (emphasis added).
In this regard, the plaintiff somewhat confusingly concludes that the “Ho-Chunk Nation personnel manual containing ... the procedure for demoting employees, together with the Nation’s rules of conduct, entitled her to continued employment in her position ... and created an implied contract for demotion only for just cause and in accordance with the procedure specified in the manual.” Id. at 8. The “procedure” that the plaintiff references appears within the non-disciplinary demotion provision, and does not constitute a procedure, but rather the conditions necessary for processing such a demotion. Pers. Manual, Ch. 6 at 17. The plaintiff nonetheless argues that the requirements “that the employee ... be[ ] employed for at least 90 days; and have a good current evaluation ... restricts an employer from demoting an employee for a non-disciplinary reason without protecting the employee’s property rights, such as her earnings, reputation and work history.” Mem. at 11 (citing id.).
The plaintiff, however, does not explain how these minimal conditions either protect “earnings, reputation and work history” or how these “factors underlying the necessity of a pre-termination hearing” have become recognized property rights. Margaret G. Garvin v. Donald Greengrass et al., CV 00-10, -38 (HCN Tr. Ct., Mar. 9, 2001) at 27. In Garvin, the Court set forth several accepted rationales for affording pre-deprivation minimal procedural due process in the context of a termination, but one must still possess a property interest to engage in a due process analysis. Id. at 27-28. The plaintiff seemingly insists on self-identifying property interests as opposed to identifying *17 the statutory bases for the same. She “confuses the mere loss of something of value (such as wages) with injury to a property interest (such as the right to earn wages).”[3] Diaz v. Gates, 420 F.3d 897, 900 n. 1 (9th Cir.2005).
Moreover, the plaintiff does not explain why she focuses upon the non-disciplinary demotion provision when the Court has determined that the defendants performed a disciplinary demotion. Order (Determination upon Remand) at 8. The Court can only speculate that the plaintiff attempts to ding to the two (2) conditions appearing in the non-disciplinary provision since neither provision requires the presence of “good cause” for its execution. Pers. Manual, Ch. 6 at 17. As earlier stated, “[t]he Nation could arguably demote an employee for a disciplinary reason or no reason at all.” Order (Determination upon Remand.) at 10. Quite simply, no convincing argument exists supporting a property interest in one’s position under the Personnel Manual.
The Ho-Chunk Nation Supreme Court has asserted that “[tjhrough the binding precedent of HCN case law it is clear that supervisors fail to afford an employee with due process when they do not provide the employee with at least a minimal opportunity to be heard before a suspension or termination.” Kenneth L. Twin v. Toni McDonald et al., 6 Am. Tribal Law 172, 2006 WL 5820604 (Ho-Chunk 2006) at 7. This case precedent all derives from a single pronouncement in the introductory paragraphs of the former Personnel Man ual, namely: “all employees are terminable for cause unless otherwise specified in writing as a prescribed employment term ...Pers. Manual, Intro, at 2. The Personnel Manual defines “discharge” as an “involuntary separation or termination of employment.” Id., Ch. 14 at 69. Likewise, “suspension” is defined as a “temporary removal of an employee from service.” Id. at 72.
Conversely, the plaintiffs demotion did not sever the employment relationship with the Nation. The plaintiffs employment continued without interruption. A demotion involves a “change in employment status,” which may result in “movement from one position to another.” Id., at 69. Therefore, the plaintiffs repeated arguments that the demotion impacted her “continued employment” are neither accurate nor apt. Supra p. 13, note 3; see also Ross v. Clayton County, 173 F.3d 1305, 1307 (holding “that an employee may have a property interest in his rank in addition to a property interest in continued employment itself’).
Existing federal case law, albeit minimal, lends further credence to this outcome.
*18 The same analysis applied to determine the existence of a property right in employment is utilized to determine if there is a property right in a particular employment status. Procedural detail in a statute or regulation, standing alone, is not sufficient to establish a protected property interest in an employment benefit. However, if the statute or regulation places substantive restrictions on the discretion to demote an employee, such as providing that discipline may only be imposed for cause, then a property interest is created.
Hennigh v. Shawnee, 155 F.3d 1249, 1254 (10th Cir.1998) (citation omitted) (acknowledging that a collective bargaining agreement, contracted pursuant to state legislation, required the presence of “good cause” in the context of a demotion); accord Sonnleitner v. York, 304 F.3d 704, 711 (7th Cir.2002); Williams v. Kentucky, 24 F.3d 1526, 1538 (6th Cir.1994); Sowers v. City of Fort Wayne, 737 F.2d 622, 624 (7th Cir.1984); Shawgo v. Spradlin, 701 F.2d 470, 476 (5th Cir.1983). Each of the above-cited cases found the presence of a property interest in one’s position, but the underlying terms and conditions of employment each required that good cause justify a demotion. The Personnel Manual contains no such good cause provision in relation to a demotion, disciplinary or nondisciplinary. Pers. Manual, Ch. 6 at 17.
Based upon the foregoing, the Court holds that the plaintiff did not maintain a property interest in her position under the former Personnel Manual. The Ho-Chunk Nation Legislature (hereinafter Legislature) specifically enabled supervisors to demote an employee without cause. The defendants consequently had no constitutional duty to afford the plaintiff pre-deprivation minimal procedural due process. In this instance, the defendants executed a disciplinary demotion after the plaintiff did not satisfy expectations following her promotion. Nevertheless, the Personnel Manual does not require the presence of good cause to support the demotion, and the Court has no authority to deem otherwise lest it assume a legislative function. The Court has no power, explicit or implicit, to set terms and conditions of employment. See Const., Art. V, § 2(a, f).
II. Does the failure to provide a statutorily required disciplinary notice provide the plaintiff with an actionable offense?
The Court has resolved that the defendants masked a non-disciplinary demotion for one of a disciplinary nature. While the plaintiff was not entitled to procedural due process notification, the Personnel Manual still requires the provision of disciplinary notice. Pers. Manual, Ch. 12 at 60. The Legislature may have intended the notice section to address the formal measures of discipline discussed within Chapter 12 (written reprimand, suspension and discharge), but the Legislature clearly identified the disciplinary character of the demotion at issue here. Furthermore, neither party provided the Court with legislative history capable of further elucidating the disciplinary notice section.
The section in question instructs that “[disciplinary notice to regular employees, should, as a general rule, contain [certain] information.” Id. (emphasis added). A supervisor, therefore, maintains some discretion regarding the contents of the notice since the directive is phrased in permissive language. However, the notice must be in written form as reflected within the following service provision, which permits service by either “personal presentation” or mailing Id. Former Director of Gaming Garvin offered a verbal notification that did not reveal the disciplinary status of the demotion, and the Court accordingly adjudged that “[t]he plaintiff re *19 ceived no notice of the demotion.” Order (Denying PI. ⅛ Mot for Summ. J.) at 12.
In 2004, the Court permitted a litigant to attack the propriety of a non-disciplinary demotion. Anna Kaufman v. Dennis Gager, Dir. of Gaming, et al., CV 02-49 (HCN Tr. Ct., Mar. 30, 2004). Ms. Kauff-man received a promotion from her immediate supervisor, but the Director of Gaming subsequently overturned the action since he believed that the plaintiff did not meet the minimum qualifications for the job. Id. at 14, 18. At trial, the plaintiff presented testimonial accounts from her supervisor, a Personnel Specialist, and the General Manager, all who supported the grounds for the promotion. Id. at 10-13, 16,19. As a result, the Court deemed that the articulated grounds for the demotion proved in error, and awarded the plaintiff a degree of money damages for lost wages.[4] Id. at 20.
The Court recognizes that Kauffman dealt with a non-disciplinary demotion, but the instant plaintiff likewise could have attacked the justification(s) for the disciplinary demotion. The plaintiff remained largely unable to do so since the defendants provided no rationale until responding to interrogatories four and a half (4 Jé) years later. Yet, the plaintiff did ultimately receive this opportunity, and, at trial, could not elicit the testimony of anyone within the supervisory chain of command who would have decided otherwise. Therefore, regardless of the amount of time between the demotion and the articulated justification thereof, the Court would have upheld the basis for the defendants’ discretionary action. The defendants deprived the plaintiff of a timely notice, which they could have subsequently perfected, thereby removing any grounds for awarding the plaintiff her former position. The plaintiff may have possibly been able to pursue an award of money damages to compensate for the period of time that elapsed before receiving notification, if it were not for one dispositive fact addressed below.
III. Did the Personnel Manual provide an aggrieved employee the ability to pursue a claim for money damages in the context of a disciplinary demotion?
The Court does maintain subject matter jurisdiction over the instant cause of action, but the mere fact that a litigant may file suit does not obviate the Nation’s sovereign immunity. See Const., Art. VII, § 5(a); see also Marlene C. Cloud et al. v. Ho-Chunk Nation et al., CV 06-31 (HCN Tr. Ct., Aug. 21, 2007) at 12. The Nation “shall be immune from suit except to the extent that the Legislature expressly waives its sovereign immunity.” Id., Art. XII, § 1. In this regard, the Legislature has passed a limited waiver of sovereign immunity, which it subsequently incorporated into the Personnel Manual. Pees. Manual, Ch. 12 at 63-64 (codifying HCN Leg. Res. 06-09-98A at 2).
Within the limited waiver, the Legislature pronounced a condition precedent to availing oneself of the ability to claim money damages. Specifically, “{j Judicial review of any appealable claim may proceed to the Ho-Chunk Nation Tribal Court after the Administrative Review Process in this Chapter has been exhausted.” Id. (emphasis added). Relevant to this case, a grievance may proceed to Court, provided that it concerns either a suspension or *20 termination.[5] Id. at 68. The plaintiff had the right to grieve within the Administrative Review System, id. at 62, but the Personnel Manual restricts Trial Court review to only two (2) causes of action. Id. at 68.
The Court consequently cannot entertain a request for lost wages in relation to a demotion. The language of the limited waiver of sovereign immunity is anything but express, which is a constitutional requirement. Const., Art. XII, § 1. One might then reasonably question the result in Kauffman where the Court did award monetary relief. However, in Kauffman, the defendant, Rainbow Casino, did not assert the defense of sovereign immunity within its responsive pleading. Kauffman, CV 02-49 (June 17, 2002) at 2. The Court deems that the Nation waives this affirmative defense if not pled in an answer. See Louella A. Kelty v. Janette Pettibone et al., 6 Am. Tribal Law 320, 2006 WL 5891107 (HCN Tr. Ct.2006); see also Frey v. EPA, 270 F.3d 1129, 1135 (7th Cir.2001); Cards v. State, 62 Wis.2d 42, 46, 214 N.W.2d 405 (Wis.1974). In the case at bar, the defendants affirmatively pled the defense of sovereign immunity, and, therefore, the plaintiff cannot receive money damages.
The parties retain the right to file a timely post judgment motion with this Court in accordance with HCN R. Civ. P. 58, Amendment to or Relief from Judgment or Order. Otherwise, “[ajny final Judgment or Order of the Trial Court may be appealed to the Supreme Court. The Appeal must comply with the Rides of Appellate Procedure [hereinafter HCN R.App. P. 1, specifically Rules of Appellate Procedure, Rule 7, Right of Appeal.” HCN R. Civ. P. 61. The appellant “shall within sixty (60) calendar days after the day such judgment or order was rendered, file with the Supreme Court Clerk, a Notice of Appeal from such judgment or order, together with a filing fee as stated in the appendix or schedule of fees.” HCN R.App. P. 7(b)(1). “All subsequent actions of a final Judgment or Trial Court Order must follow the [HCN R.App. P.\.” HCN R. Civ. P. 61.
IT IS SO ORDERED this 26th day of January 2009, by the Ho-Chunk Nation Trial Court located in Black River Falls, WI within the sovereign lands of the Ho-Chunk Nation.

. The plaintiff submitted her Memorandum by facsimile transmission at 2:35 p.m. PDT on Friday, October 10, 2008, which caused administrative staff to file stamp the document as received on Monday, October 13, 2008, since technically received after business hours at 4:35 p.m. CDT on October 10, 2008. See Ho-Chunk Nation Rules of Civil Procedure (hereinafter HCN R. Civ. P.), Rule 84. The Court nonetheless considered the plaintiffs submission since it did not explicitly reference the Central Time Zone within its briefing schedule.

. In a subsequent amended pleading, the plaintiff discards this version of the facts, alleging that "[wjithout warning or notice, the Defendant [sic ] was demoted from her position as Executive Director of De lope [sic ] Bingo and Gaming Center on April [sic ] 23, 2004...." PL's First Am. CompL, CV 04-72 (Jan. 18, 2005) at 2. The plaintiff reiterated this account within a later dispositive motion. Br. in Stipp. of Mot. for Summ. J., CV 04-72 (Nov. 23, 2005) at 2; but see Mem. at 14.

. The Court earlier conjectured that an employee might conceivably hold a liberty interest in connection with one's personnel record, but the plaintiff makes no concise argument in the case at bar for recognizing this type of interest Garvin, CV 00-10, -38 at 29-30. Instead, the plaintiff continues to simply presume the results of a legal argument without making a measured argument in the first instance. And, in doing so, the plaintiff claims that the "denial of a pre-demotion hearing ... adversely affected a cognizable property interest in her continued employment under HCN law.” Mem. at 16 (emphasis added). Regarding liberty interests, the Ninth Circuit Court of Appeals noted that "accusations against an employee do not implicate a constitutional liberty interest unless they seriously damage [her] community standing and associations or foreclose [her] freedom to pursue other employment.” Wheaton v. Webb-Petett, 931 F,2d 613, 617 (9th Cir.1991). Ms. Warner has not even attempted to present such a case, and since the demotion was processed as a non-disciplinary measure, she would likely prove unable to make the necessary showing.

. The Court raised the possibility that a due process violation might have occurred, but the Court has not had the occasion to analyze this separate issue until the present case. Kauffman, CV 02-49 at 18 n.2.

. The Court has continued to adjudicate other identified grievable matters. See, e.g., Kauff-man, CV 02-49 (alleging unfair reassignment in the form of a demotion); Regina K. Baldwin et al. v. Ho-Chunk Nation et al., CV 01-16,-19 -21 (HCN Tr. Ct„ Oct. 3, 2003) (alleging unfair treatment and discrimination in the context of a layoff); Liana Bush et al. v. Clarence Pettihone, in his official capacity as Vice President of the Ho-Chunk Nation, et al., CV 00-93, -101 (HCN Tr. Ct„ Jan. 23, 2001) (alleging unfair compensation determination). The Court has essentially concluded that these causes of action arose under the laws of the Ho-Chunk Nation, and the Legislature could not unnecessarily constrict the subject matter jurisdiction of the Court. See Const.. Art. VII, § 5(a). Regardless, the Court has no authority to modify the waiver of sovereign immunity. The aforementioned cases proceeded against the named individuals for declaratory and non-monetary injunctive relief with a single exception as discussed below. Id., Art X1Í, § 2.