**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSEPH A. PAKOOTAS, an individual
and enrolled member of the
Confederated Tribes of the
Colville Reservation and DONALD
R. MICHEL, an individual and
enrolled member of the
Confederated Tribes of the Coville
Reservation,
              *Plaintiffs-Appellants,*

STATE OF WASHINGTON,
    *Petitioner-Intervenor-Appellant,*

              and

CONFEDERATED TRIBES OF THE
COLVILLE RESERVATION,
                        *Plaintiff,*

              v.

TECK COMINCO METALS, LTD., a
Canadian corporation,
              *Defendant-Appellee.*

No. 08-35951

D.C. No.
2:04-cv-00256-LRS

7207

JOSEPH A. PAKOOTAS, an individual
and enrolled member of the
Confederated Tribes of the
Colville Reservation; DONALD R.
MICHEL, an individual and enrolled
member of the Confederated
Tribes of the Coville Reservation;
CONFEDERATED TRIBES OF THE
COLVILLE RESERVATION,
                    *Plaintiffs-Appellees,*

STATE OF WASHINGTON,
       *Plaintiff-Intervenor-Appellee,*

               v.

TECK COMINCO METALS, LTD., a
Canadian corporation,
                    *Defendant-Appellant.*

No. 10-35045

D.C. No.
2:04-cv-00256-LRS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, Chief District Judge, Presiding

Argued and Submitted
November 6, 2009—Seattle, Washington

Filed June 1, 2011

Before: Arthur L. Alarcón, Andrew J. Kleinfeld, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Kleinfeld

## COUNSEL

Paul J. Dayton, Short Cressman & Burgess, PLLC, Seattle, Washington, for the appellants.

Michael L. Dunning (argued), and Kristie E. Carevich (briefed), Assistant Attorneys General, Olympia, Washington, for intervenor-appellant State of Washington.

C. Douglas Floyd (argued), and Kevin M. Fong (briefed), Pillsbury Winthrop Shaw Pittman LLP, San Francisco, California, for the appellee.

---

## OPINION

KLEINFELD, Circuit Judge:

We address citizen suit jurisdiction under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA).

## I. Facts

Teck Cominco Metals Limited (Teck Cominco), a Canadian mining company, owns a smelter in Trail, British Columbia. From 1905 to 1995, slag from the smelter was dumped in the Columbia River, ten miles north of the border with Washington.[1] Pollution flowed downstream into the United States.

In 1999, the Colville Tribes petitioned the Environmental Protection Agency (EPA) to assess environmental contamination in the Columbia River and Lake Roosevelt, which border their reservation's lands.[2] The EPA completed its investigation in 2003, determining that the Upper Columbia River site was eligible for inclusion on CERCLA's National Priorities List.[3] That list is colloquially called the "Superfund List" because sites on it are top priorities for cleanup and are eligible for CERCLA-financed remedial action.[4]

---

[1]*See Pakootas v. Teck Cominco*, 452 F.3d 1066, 1069 (9th Cir. 2006) (hereinafter, *Pakootas I*).

[2]*Id.*

[3]*Id.*

[4]*See* 42 U.S.C. § 9605(c); *see also United States v. W.R. Grace & Co.*, 429 F.3d 1224, 1228-29 (9th Cir. 2005) ("For example, remedial actions are only eligible for Superfund financing when the site is listed on the National Priorities List.").

While the EPA's investigation was still ongoing in 2002, Teck Cominco and its American subsidiary, Teck Cominco American Incorporated, negotiated with the EPA, but did not reach an agreement.[5] Complications arose from, among other reasons, Canadian government concerns about Canadian sovereignty and the American assertion of jurisdiction.

No voluntary agreement was reached, so the EPA in December 2003 issued a unilateral administrative order.[6] The order commands Teck Cominco and its American subsidiary to conduct a remedial investigation and feasibility study to assess the site conditions and to implement a cleanup.[7] Teck Cominco did not comply with the order.[8] The EPA took no action to enforce it.[9]

Plaintiffs Joseph A. Pakootas and Donald R. Michel sued Teck Cominco to enforce the EPA's unilateral administrative order.[10] They founded jurisdiction on the citizen suit provision of CERCLA,[11] seeking: (1) a declaration that Teck Cominco was in violation of the order; (2) an injunction compelling

---

[5]*Pakootas I*, 452 F.3d at 1070.

[6]*Pakootas I*, 452 F.3d at 1070.

[7]*Id.* at 1068.

[8]*Id.* at 1070. In their Second Amended Complaint, Plaintiffs allege that Teck Cominco "unequivocally indicated its intent not to comply with the terms of the U[nilateral ]A[dministrative ]O[rder] by its letter dated January 12, 2004 from G. Leonard Manual to Michael F. Gearhead."

[9]*Pakootas I*, 452 F.3d at 1070.

[10]Counsel for the parties, evidently specialists in environmental law, refer to the unilateral administrative order as a "UAO." We use the English language here and elsewhere to avoid taxing the reader with unnecessary memorization of acronyms. *See Northern Cheyenne Tribe v. Norton*, 503 F.3d 836, 839 n.1 (9th Cir. 2007); *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1308 n.1 (9th Cir. 1992).

[11]42 U.S.C. § 9659(a)(1).

compliance; (3) penalties for Teck Cominco's failure to comply; and (4) attorneys' fees and costs.[12]

Teck Cominco moved to dismiss for lack of subject matter and personal jurisdiction, and for failure to state a claim upon which relief could be granted. Before the district court ruled on the motion to dismiss, the State of Washington intervened in the litigation and sought the same relief. The district court denied Teck Cominco's motion to dismiss, but certified the order for interlocutory appeal.[13] While that appeal was before us, the Confederated Tribes of the Colville Reservation joined as a party plaintiff. Subsequently, the State amended its complaint to seek the anticipated costs of the CERCLA recovery and assessment, as well as declaratory relief regarding the reasonable costs of assessing natural resource damages, a claim that is proceeding in district court. The Colville Tribes have added the same demand as the State, and these claims are now proceeding in district court.

We affirmed the district court's denial of Teck Cominco's motion. We held that the suit was not an extraterritorial application of CERCLA because even though the smelter was in Canada, slag had moved downstream into the United States.[14] Because a "site" where a hazardous substance has "come to be located" falls within the definition of a "facility" in CERCLA, we held that the EPA was not acting extraterritorially in addressing that downstream "facility."[15] The unilateral administrative order, we held, was addressed to this "facility" within the State of Washington.[16] We did not reach the ques-

---

[12]*Pakootas I*, 452 F.3d at 1070.

[13]*Id.* at 1071.

[14]*Id.* at 1074.

[15]*Id.*

[16]*Id.*

tion of whether Congress intended CERCLA to apply extraterritorially.[17]

While that appeal was pending, but before we had decided it, the EPA and Teck Cominco settled. The settlement went into effect in June 2006. Teck Cominco, the Canadian company together with its American subsidiary, and the EPA, signed what they called a "contractual agreement" (not a stipulation for a consent decree or other court order) to perform remediation. Teck Cominco consented to personal jurisdiction in the United States District Court "solely for the limited purpose of an action to enforce" designated provisions of the contract. The EPA covenanted not to sue for penalties or injunctive relief for noncompliance with the unilateral administrative order, "conditioned upon the satisfactory performance" by Teck Cominco of its obligations under the contract. And pursuant to the contract, the EPA withdrew the unilateral administrative order. To this day, the EPA has taken no action to collect penalties for Teck Cominco's 892 days of noncompliance with that order.[18]

Meanwhile, Teck Cominco had petitioned for certiorari from our decision. The Supreme Court, evidently considering the petition quite seriously, invited the Solicitor General to

---

[17]*See id.*

[18]Teck Cominco was out of compliance with the unilateral administrative order for 892 days: from its original issuance on December 11, 2003 until it was withdrawn on June 2, 2006 by the settlement with the EPA. This length of time could be very costly for Teck Cominco, as the statutory fines for violating an order on a daily basis quickly add up. *See* 42 U.S.C. § 9606(b)(1) ("(1) Any person who, without sufficient cause, willfully violates, or fails or refuses to comply with, any order of the President under subsection (a) may, in an action brought in the appropriate United States district court to enforce such order, be fined not more than $25,000 for each day in which such violation occurs or such failure to comply continues."); *see also* 73 Fed. Reg. 75,340, 75,340-46 (Dec. 11, 2008) (setting the current maximum monetary penalty amount for noncompliance at $37,500 per day).

express the views of the United States. The Solicitor General, urging denial of certiorari, filed an amicus brief arguing both that the case was moot because of the settlement agreement, and that citizen suits for penalties could be brought only for ongoing, not past, violations. The Court denied certiorari, so these arguments were not ruled upon.[19]

Plaintiffs then amended their complaint, no longer seeking declaratory and injunctive relief, but maintaining their claims for civil penalties for Teck Cominco's 892 days of noncompliance with the unilateral administrative order, and for costs and attorneys' fees. Teck Cominco once again moved to dismiss. The district court dismissed the claims under Rule 12(b)(1) for lack of jurisdiction. The district court granted a stipulated Rule 54(b) certification of its dismissal order, because Pakootas and Michel had no claims except for penalties for the 892 days of past noncompliance, and resolution of the remaining claims of the Colville Tribes and the State of Washington for response costs or damages from the cleanup might not be resolved for several years.

Plaintiffs appeal.

## II.   Analysis

We review a district court's Rule 12(b)(1) dismissal de novo.[20] The district court held that the Pakootas-Michel claim for penalties for the 892 days of noncompliance was a challenge barred by 42 U.S.C. § 9613(h), and that it did not fall within § 9613(h)(2)'s exception. We generally agree with the district court's careful analysis and affirm. Appellants argue that the district court erred in both respects, and also that these statutory limitations go only to whether a claim upon which relief could be granted was stated, and not jurisdiction.

---

[19]*Teck Cominco Metals, Ltd. v. Pakootas*, 552 U.S. 1095 (2008).

[20]*Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1156 (9th Cir. 2007) ("We review de novo dismissals under Rules 12(b)(1) and 12(b)(6).").

## A.   Is 42 U.S.C. § 9613(h) jurisdictional?

**[1]** Plaintiffs argue that 42 U.S.C. § 9613(h) is a timing regulation, not a limitation on jurisdiction. We disagree. Here is the relevant statutory language:

### (h) Timing of review

*No Federal court shall have jurisdiction* under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) *to review any challenges to removal or remedial action* selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, *in any action except one of the following*:

(1) An action under section 9607 of this title to recover response costs or damages or for contribution.

(2) *An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.*

(3) An action for reimbursement under section 9606(b)(2) of this title.

(4) *An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.*

(5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.[21]

Plaintiffs argue that both the title of the subsection, "Timing of review," and a Seventh Circuit decision, *Frey v. EPA*,[22] establish that the statute merely regulates timing, and is not a true jurisdictional statute.

**[2]** Subsequent to the Seventh Circuit's decision, the Supreme Court clarified how to determine whether a statute limits jurisdiction or simply affects whether a claim for relief can be stated.[23] *Arbaugh v. Y & H Corp.* concedes that the Supreme "Court and others have been less than meticulous" about when statutes should be deemed "jurisdictional."[24] Rejecting what it called "drive-by jurisdictional rulings,"[25] the Court adopted a "readily administrable bright[-]line" test.[26] "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue."[27] If not, then the restriction is nonjurisdictional.[28]

---

[21]42 U.S.C. § 9613(h) (emphases added).

[22]270 F.3d 1129 (7th Cir. 2001).

[23]We recently acknowledged that a jurisdictional limitation, such as "[s]tanding, or the lack of it, may be intertwined with whether the complaint states a claim upon which relief can be granted, but it is not the same thing." *Catholic League for Religious and Civil Rights v. City and County of San Francisco*, No. 06-17328, ___ F.3d ___, 2010 WL 4138432, at *2 (9th Cir. Oct. 22, 2010) (en banc).

[24]546 U.S. 500, 511 (2006).

[25]*Id.* at 512.

[26]*Id.* at 516.

[27]*Id.* at 515-16; *see also Henderson v. Shinseki*, No. 09-1036, slip op. at 6 (S. Ct. Mar. 1, 2011) ("Under *Arbaugh*, we look to see if there is any 'clear' indication that Congress wanted the rule to be 'jurisdictional.' This approach is suited to capture Congress' likely intent and also provides helpful guidance for courts and litigants, who will be 'duly instructed'

The Court reemphasized this bright-line test last year in *Reed Elsevier, Inc. v. Muchnik*, focusing on whether the word "jurisdiction" was used in a sentence controlling the claim at issue.[29] And even more recently in *Henderson v. Shinseki*, the Court held that the 120-day deadline for filing appeals in Veterans Court was nonjurisdictional because the provision at issue did not speak in jurisdictional terms.[30]

**[3]** Here, the statute says "[n]o Federal court shall have jurisdiction . . . ."[31] That language expressly addresses jurisdiction, satisfying the bright-line test of *Arbaugh*.[32] Because the words are "[n]o Federal court shall have jurisdiction," the statute means that no federal court shall have jurisdiction. The statute limits the timing of judicial review[33] by means of the "jurisdiction-stripping provision contained in 42 U.S.C. § 9613(h)."[34] Were we to wiggle around the words "[n]o Federal court shall have jurisdiction" because of the timing language, we would be doing just the sort of "wrestl[ing]" *Arbaugh* rejects in favor of a bright-line test.[35] As we held in

---

regarding a rule's nature." (citing *Arbaugh*, 546 U.S. at 514-16, and n.11)).

[28]*See id.*; *Arbaugh*, 546 U.S. at 515-16; *Bodine v. Graco, Inc.*, 533 F.3d 1145, 1148 (9th Cir. 2008) ("Because [49 U.S.C. ]§ 32710(a) 'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts,' it was improper to dismiss this case on jurisdictional grounds." (quoting *Arbaugh*, 546 U.S. at 515)).

[29]130 S. Ct. 1237, 1244-45 (2010) (discussing *Arbaugh* and choosing to "apply this same approach to [17 U.S.C.] § 411(a)").

[30]*Henderson v. Shinseki*, No. 09-1036, slip op. at 8-9 (S. Ct. Mar. 1, 2011).

[31]42 U.S.C. § 9613(h).

[32]*Arbaugh*, 546 U.S. at 516.

[33]*City of Rialto v. West Coast Loading Corp.*, 581 F.3d 865, 869-71 (9th Cir. 2009).

[34]*Id.* at 869.

[35]*Arbaugh*, 546 U.S. at 516.

*McClellan Ecological Seepage Situation v. Perry*, the statute "amounts to a 'blunt withdrawal of federal jurisdiction.' "[36]

**B.   Does the jurisdictional bar apply?**

**(1)   Is the Pakootas-Michel suit for penalties a "challenge"?**

**[4]** The jurisdictional bar applies to "challenges to removal or remedial action . . . ."[37] The statute " 'withholds federal jurisdiction to review . . . claims, including those made in citizen suits and under non-CERCLA statutes, that are found to constitute 'challenges' to ongoing CERCLA cleanup actions."[38] Appellants argue that they make no challenge to the ongoing remedial action pursuant to the contract, because all they seek are penalties for the 892 days of past noncompliance with the withdrawn unilateral administrative order.

**[5]** Congress made a choice to "protect[ ] the execution of a CERCLA plan *during its pendency* from lawsuits that might interfere with the expeditious cleanup effort."[39] As we held in *McClellan*, where the EPA works out a plan, and a citizen suit "seeks to improve on the CERCLA cleanup" because it "wants more," that constitutes interference.[40] Such a claim "would second-guess the parties' determination and thus interfere with the remedial actions selected . . . ."[41]

True, plaintiffs seek only past penalties, not any additional requirements for the ongoing cleanup. But that demand is still a challenge.

---

[36]47 F.3d 325, 328 (9th Cir. 1995).

[37]42 U.S.C. § 9613(h).

[38]*McClellan*, 47 F.3d at 329.

[39]*Id.*

[40]*Id.* at 330.

[41]*Id.*

First, Teck Cominco and the EPA made a deal to accomplish the cleanup. Part of their contract is that the penalties are neither sought nor waived. They are the EPA's hammer, held over Teck Cominco's head. The penalties are not Pakootas and Michel's hammer to wield. The penalties are the EPA's hammer.

**[6]** Under the agreement, the United States covenanted not to sue for the penalties for the 892 days, "conditioned upon the satisfactory performance" by Teck Cominco of its cleanup obligations.[42] That conditional covenant not to sue means that if Teck Cominco does not perform its obligations, the EPA can bring down its hammer, by seeking penalties of up to $27,500 a day for 892 days,[43] more than $24 million. The penalties Pakootas and Michel want to enforce are the hammer EPA retained to compel performance of the agreement. If

---

[42]The relevant paragraph of the agreement is as follows:

[T]he United States covenants not to sue or to take administrative action against T[eck ]C[ominco] and T[eck ]C[ominco ]A[merican ]I[ncorporated] pursuant to Sections 106 and 107(a) of CER-CLA, 42 U.S.C. §§ 9606 and 9607(a) . . . for (i) civil penalties or injunctive relief for non-compliance with the Unilateral Administrative Order issued by EPA to T[eck ]C[ominco] on December 11, 2003, or (ii) for performance of the R[emedial ]I[nvestigation]/F[easibility ] S[tudy] costs paid by T[eck ]C[ominco ]A[merican ]I[ncorporated]. This covenant not to sue shall take effect upon the Effective Date of this Settlement Agreement, and is conditioned upon the satisfactory performance by T[eck ]C[ominco ]A[merican ]I[ncorporated] and T[eck ]C[ominco] of their obligations under this Agreement.

United States Environmental Protection Agency, *Agreement for Remedial Investigation and Feasibility Study*, at 22 (June 2, 2006), *available at* http://yosemite.epa.gov/R10/CLEANUP.NSF/7780249be8f251538825650 f0070bd8b/f0e551fb8a69dcd288256fac00064739/$FILE/TeckCominco_ SettlementAgreement.pdf.

[43]*See* 42 U.S.C. § 9606(b)(1); *see also* 73 Fed. Reg. 75,340, 75,340-46 (Dec. 11, 2008) (listing the maximum penalties rate for noncompliance from January 31, 1997 through March 15, 2004 at $27,500 per day, and from March 16, 2004 through January 12, 2009 at $32,500).

Pakootas and Michel were to enforce the penalties, the EPA would be left bare-handed, without this weapon. And if Teck Cominco paid the parties adjudicated before the cleanup was done, it might find it economically advantageous to walk away from further cleanup efforts, an "efficient breach."[44]

Also, were the EPA to seek to enforce the agreement at that point, all the risks to its position raised by extraterritoriality concerns and other litigation hazards would rise again.[45] Like all litigation, a lawsuit against Teck Cominco could go sour for the EPA. No doubt that risk played into its decision to settle the matter by contract.

[7] In addition, penalties exacted before a cleanup is completed may interfere with the ability to perform a cleanup. While Teck Cominco may, for all we know, have the ability to pay $24 million in penalties and possibly a great deal of additional money to Pakootas and Michel for attorneys' fees, and still have plenty of money left for a cleanup, that cannot be assumed for this or for all cases. Many polluters do not have unlimited financial resources. Sometimes the orange is squeezed dry. And if it is, whatever juice going to the government in penalties and to the lawyers in fees cannot go from the polluter to the contractors who perform the cleanup work.

---

[44]*See, e.g.*, Charles Goetz & Robert Scott, *Liquidated Damages, Penalties, and the Just Compensation Principle*, 77 Colum. L. Rev. 554, 578 (1977); *cf.* Oliver Wendell Holmes Jr., *The Path of the Law*, 10 Harv. L. Rev. 457, 459 (1897) ("If you want to know the law and nothing else, you must look at it as a bad man, who cares only for the material consequences which such knowledge enables him to predict, not as a good one, who finds his reasons for conduct, whether inside the law or outside of it, in the vaguer sanctions of conscience.").

[45]*See, e.g.*, *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2878 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none."). The Supreme Court's recent decision in *Morrison* shows the Court's interest in the extraterritorial application of statutes, and this is confirmed by the Court having invited for the views of the Solicitor General on the extraterritoriality issue with the previous petition for certiorari in this case in 2007.

A suit for past penalties always has the potential to interfere with ongoing cleanup efforts, because of its potential effect on the responsible party's financial ability to perform the cleanup. The $24 million in potential penalties that the contract holds over Teck Cominco's head not only works as a hammer, but also as a means by which Teck Cominco can perform the cleanup or pay the money to the government. Some polluters, facing a suit for past penalties while cleanup is ongoing, may simply go bankrupt and leave,[46] or use the threat of bankruptcy as their own hammer to hold over the EPA's head.

Appellants argue that our decision in *ARCO Environmental Remediation, LLC. v. Montana Department of Health & Environmental Quality* limits "challenges" to claims that would dictate specific remedial actions or reporting requirements or otherwise alter the cleanup plan.[47] It does not. In that case, ARCO, a potentially responsible party, sued a State of Montana agency to get access to documents pertaining to an agreement between the State of Montana and the EPA relating to a cleanup.[48] It was not a citizen suit for penalties, nor did it affect in any way the ongoing cleanup.[49] We held that the lawsuit to obtain access to documents "involves only the public's right of access to information about the cleanup," so it was not a "challenge."[50] Appellants would have us parse the word "incidental" in the decision, and infer a negative pregnant from the distinction *ARCO* drew between the suit for documents and several cases where we had held that citizen suits

---

[46]*See* Ingrid Martin, *Spark Seeks to Ignite New Markets: Fairbanks Battery-Maker Earl Romans Takes his Expertise to Russia*, Alaska Bus. Monthly at 56 (June 1992) (describing how a cold-weather battery manufacturer, faced with a $3.2 million Superfund liability, closed his business, went bankrupt, and left for Russia to manufacture batteries there instead).

[47]213 F.3d 1108 (9th Cir. 2000).

[48]*Id.* at 1111.

[49]*See id.* at 1115.

[50]*Id.*

were "challenges." But our decision in *ARCO* does not hold, as appellants argue, that no suit is a "challenge" unless it seeks to dictate specific remedial actions, to postpone the cleanup, to impose additional reporting requirements, or to terminate or alter a cleanup.[51] These were the "challenges" that *ARCO* distinguished. The holding of *ARCO* is that a suit for documents is not a challenge to an ongoing cleanup, not that challenges are limited to the four cases *ARCO* distinguishes.[52]

Finally, if suits for penalties are not "challenges," Congress would not have had to make an exception for EPA suits to recover penalties. The EPA could seek penalties without subsection (h)(2), if penalties were not "challenges." Subsection (h)(2) would thus be surplusage if a suit for past penalties were not a "challenge[ ]."

[8] A citizen suit for penalties is indeed a "challenge[ ] to removal or remedial action selected by EPA . . . ."[53]

### (2)   Does the penalty exception apply?

Plaintiffs argue alternatively that even if a citizen suit for penalties while remediation is ongoing is a challenge, the jurisdiction-stripping statute has an exception for such suits. They rely on subsection (h)(2),[54] quoted in context above.

Subsection (h)(2) does not apply to citizens suits. Plaintiffs

---

[51]*Id.*

[52]*Id.* at 1115-16.

[53]42 U.S.C. § 9613(h).

[54]The operative words of subsection (h)(2) are as follows: "No Federal court shall have jurisdiction . . . to review any challenges to removal or remedial action . . . in any action except one of the following: . . . . (2) An action to enforce an order issued under section 9606(a) of this title *or to recover a penalty for violation of such order*." 42 U.S.C. § 9613(h)(2) (emphasis added).

argue for a "plain language" reading, and we agree that such a reading is appropriate. But it does not suffice to only read the word "penalty." We must read all of the statutory language, including the word "recover."[55] That word means, in this context, to get money. Ordinarily, "recover" "refers to the getting back of something lost," or "[t]o receive a favorable judgment in a lawsuit."[56] If Pakootas and Michel were the parties entitled to "recover" the penalties for the 892 days of non-compliance, then the exception would apply to them. But they are not.

[9] The penalty provision speaks to penalties for violation of orders issued under 42 U.S.C. § 9606(a). Such penalties are denoted in § 9606(b) as "Fines."[57] The fines are paid to the EPA as an enforcement or cost recovery action for the Superfund.[58] They are not disbursed to persons claiming to be injured by the pollution. The statutory scheme provides that a person who without sufficient cause fails to comply with an order such as the one at issue in this case "may . . . be fined . . . for each day."[59] In appropriate circumstances, reimbursement of the fine or a portion thereof "from the [Super]Fund" may be sought.[60] The penalty money is Superfund money, payable to the government, not payable to citizens who bring lawsuits.

[10] Thus what Pakootas and Michel seek is not a penalty payable to themselves, but enforcement of a penalty payable

---

[55]*Id.*

[56]*See American Heritage Dictionary* 1035 (2d Coll. ed. 1985).

[57]42 U.S.C. § 9606(b).

[58]*See* 42 U.S.C. § 9613(h); *see also General Electric Co. v. Jackson*, 610 F.3d 110, 115 (D.C. Cir. 2010) ("Central to this case, these two options — comply and seek reimbursement, or refuse to comply and wait for EPA to bring an enforcement or cost recovery action — are exclusive.").

[59]l42 U.S.C. § 9606(b)(1).

[60]42 U.S.C. § 9606(b)(2).

to the Superfund. Such a lawsuit is not one to "recover" money. It is one to compel the payment of money to the Superfund. If we had jurisdiction, there would be a serious question as to whether Pakootas and Michel could state a claim for the EPA to recover money it has chosen not to recover at this time, but we cannot even consider that question unless the exception applies, since without the exception, we lack jurisdiction.

[11] Citizen suits for specified relief, including penalties, are provided for in 42 U.S.C. § 9659. That provision subjects citizen suits to the § 9613(h) exceptions: "Except as provided . . . in section 9613(h) of this chapter relating to timing."[61] Section 9613(h)(2) provides an exception to the jurisdictional bar for actions "to enforce an order issued under section [9606(a)] of this title or to recover a penalty for violation of such order."[62] Thus, this exception to jurisdiction stripping allows the government to enforce its orders and recover penalties for violation of them even when a cleanup is ongoing. And only the government has that prerogative.

This statutory scheme becomes much easier to interpret if we consider the sections together, to figure out what rational purpose Congress might have had.[63] And that purpose, as we

---

[61]42 U.S.C. § 9659.

[62]42 U.S.C. § 9613(h)(2).

[63]*See* Henry M. Hart, Jr. & Albert M. Sacks, *The Legal Process* 1378 (William N. Eskridge, Jr. & Philip P. Frickey eds., 1994) (1958); 2 Henry M. Hart Jr. & Albert M. Sacks, *The Legal Process* 1414-15 (tent. ed. 1958) ("In determining the more immediate purpose which ought to be attributed to a statute, and to any subordinate provision of it which may be involved, a court should try to put itself in imagination in the position of the legislature which enacted the measure . . . . It should assume, unless the contrary unmistakably appears, that the legislature was made up of reasonable persons pursuing reasonable purposes reasonably . . . . The court should then proceed to [ask] . . . Why would reasonable men, confronted with the law as it was, have enacted this new law to replace it? . . . . The most reliable guides to an answer will be found in the instances of unques-

have said, is to prevent lawsuits that would interfere with the cleanup process.[64] It makes sense that if the polluter is not performing its cleanup duties, then the EPA can swing its hammer without waiting for years until the cleanup is done. It does not make sense to read the statute as though it allowed a citizen suit to take away this compliance device before the cleanup is complete. And that pragmatic arrangement is the one the words of the statute adopt.

The separate citizen suit exception that Congress provided to the jurisdiction-stripping statute bolsters this reading. Citizen suits are allowed under subsection (h)(4) for claims that the remediation itself violates the statute.[65] We note that even in this circumstance, Congress wrote an exception to this citizen suit exception (so that jurisdiction remains absent), "where a remedial action is to be undertaken at the site."[66] This careful structuring by Congress would be gutted if a citizen suit could escape the limitations and the exception to the exception in subsection (h)(4). Yet that is just what plaintiffs urge, dancing around subsection (h)(4)'s citizen suit provision and trying to use the different exception in subsection (h)(2).

---

tioned application of the statute. Even in the case of a new statute there almost invariably are such instances, in which, because of the perfect fit of words and context, the meaning seems unmistakable . . . . What is crucial here is the realization that law is being made, and that law is not supposed to be irrational.").

[64]*See, e.g.*, *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 330 (9th Cir. 1995).

[65]The operative words of subsection (h)(4) are as follows: "No Federal court shall have jurisdiction . . . to review any challenges to removal or remedial action . . . in any action except one of the following: . . . . (4) An action under [42 U.S.C. § 9659] (relating to citizens suits) alleging that the removal or remedial action taken under [42 U.S.C. § 9604] or secured under [42 U.S.C. § 9606] was in violation of any requirement of this Act. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site." 42 U.S.C. § 9613(h)(4).

[66]*Id.*

Subsection (h)(4) is the exception for citizen suits. It makes sense in this statute to apply "the *expressio unius*, or *inclusio unius*, principle."[67] Subsection (h)(2) is thus for the government, so that it can wield its own hammer during the cleanup if it deems that prudent, subsection (h)(4) is for citizen suits. The provisions for a citizen suit in subsection (h)(4) imply that citizen suits are not allowed under subsection (h)(2).

[12] We have found no circuit court authority to aid us in this interpretation. Plaintiffs urge us to follow a district court case from Puerto Rico,[68] defendants a (more thoroughly reasoned) district court case from our own circuit.[69] We agree with the conclusion reached in *Fairchild Semiconductor Corp. v. EPA* that the (h)(2) exception applies only to "[a]n action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order[,]" and that only the government may issue orders or recover penalties for violations of those orders under § 9606(a),[70] so subsection (h)(2) does not apply to citizens suits. Both sides cite snippets of language from our decisions in our earlier decision in this case,[71] *McClellan Ecological Seepage Situation v. Perry*,[72] and *City of Rialto v. West Coast Loading Corp.*,[73] but in none of those cases were we faced with deciding whether citizen suits for penalties fall within the subsection (h)(2) exception. Now we are. We conclude that they do not.

---

[67]*Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1312-13 (9th Cir. 1992) (noting that " 'when a statute limits a thing to be done in a particular mode, it includes a negative of any other mode' " (quoting *Raleigh & Gaston Ry. Co. v. Reid*, 80 U.S. 269, 270 (1871))).

[68]*M.R. (Vega Alta), Inc. v. Caribe General Elec. Products, Inc.*, 31 F. Supp.2d 226, 233 (D. Puerto Rico 1998).

[69]*Fairchild Semiconductor Corp. v. EPA*, 769 F. Supp. 1553 (N.D. Cal. 1991), *aff'd*, 984 F.2d 283 (9th Cir. 1993).

[70]*Id.* at 1560-61.

[71]*Pakootas I*, 452 F.3d 1066 (9th Cir. 2006).

[72]47 F.3d 325 (9th Cir. 1995).

[73]581 F.3d 865 (9th Cir. 2009).

## III.   Conclusion

**[13]** As the district court correctly concluded, it lacked jurisdiction to adjudicate the Pakootas and Michel claims for penalties for the 892 days of noncompliance with the unilateral administrative order, and properly dismissed their claims.

AFFIRMED.