In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2142

SARAH E. FREY, KEVIN ENRIGHT, and
PROTECT OUR WOODS, INC.,

*Plaintiffs-Appellants*,

*v.*

ENVIRONMENTAL PROTECTION
AGENCY and GINA MCCARTHY, AD-
MINISTRATOR,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:00-cv-0660-RLY-TAB — **Richard L. Young**, *Chief Judge.*

ARGUED NOVEMBER 15, 2013 — DECIDED MAY 1, 2014

Before FLAUM and HAMILTON, *Circuit Judges*, and KAPALA,
*District Judge.*[*]

---

[*]  Hon. Frederick J. Kapala, of the Northern District of Illinois, sitting by
designation.

HAMILTON, *Circuit Judge.* This environmental dispute stems from the contamination and clean-up of several sites near Bloomington, Indiana, that have been the subject of two prior decisions by this court. See *Frey v. Environmental Protection Agency*, 270 F.3d 1129 (7th Cir. 2001) ("*Frey I*"); *Frey v. Environmental Protection Agency*, 403 F.3d 828 (7th Cir. 2005) ("*Frey II*"). After our last remand of this citizen suit under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), see 42 U.S.C. § 9659 (citizen suits authorized), the parties filed cross-motions for summary judgment. Plaintiffs Sarah E. Frey, Kevin Enright, and Protect Our Woods, Inc. also filed a motion to disqualify the district judge because of his ruling in a related case.

The remediation work has been divided into three stages. The district court held that § 113(h)(4) of CERCLA, 42 U.S.C. § 9613(h)(4), deprived it of jurisdiction over the plaintiffs' claims based on the second and third stages because that remedial work was ongoing. The court then granted summary judgment for the defendants (the Environmental Protection Agency and its Administrator) on two of the remaining claims concerning the completed first stage of the remedial work and held that the third claim was moot. The district judge also denied the motion to disqualify him.

We affirm. The second and third stages of the site clean-ups are currently in progress, so § 113(h)(4) prevents the courts from reviewing plaintiffs' claims about those stages. We also conclude that § 113(h)(4) does not bar judicial review of plaintiffs' claims about the first remedial stage insofar as they are not affected by continuing clean-up efforts at the sites. The

district court correctly granted summary judgment to the EPA on plaintiffs' claims regarding the first remedial stage. Plaintiffs also are not prevailing parties on their claim that the EPA and its administrator were required to have the court enter agreements between parties as consent decrees. Finally, Chief Judge Young was not required to recuse himself, and his denial of the motion to disqualify did not violate plaintiffs' right to due process of law.

I.   *Background*

   A.   *Factual Background*

The facts underlying this dispute have been laid out in detail in *Frey I* and *Frey II*, as well as by the district court in its order granting summary judgment, see *Frey v. EPA*, 937 F. Supp. 2d 964 (S.D. Ind. 2013), so we limit our discussion to the facts relevant to this appeal.

This case arises from the contamination and clean-up of three sites in and near Bloomington, Indiana. From the late 1950s to the early 1970s, CBS (formerly Westinghouse Electric Corporation) manufactured electrical capacitors at a plant in Bloomington. The capacitors contained insulating fluid made up of polychlorinated biphenyls, known as PCBs, which are carcinogens that are toxic to both humans and wildlife. See United States Environmental Protection Agency, "Polychlorinated Biphenyls (PCBs)," www.epa.gov/waste/hazard/wastemin/minimize/factshts/pcb-fs.pdf (accessed May 1, 2014); 40 C.F.R. § 761.20 (implementing the Toxic Substances Control Act, 15 U.S.C. §§ 2601 et seq.) ("any exposure of human beings or the environment to PCBs … may be significant"). CBS deposited defective

capacitors at local landfills and dumps where PCBs escaped from the capacitors and entered the environment. CBS also discharged PCB-laden water from its plant to a local sewage treatment plant.

In the late 1970s, PCB contamination was discovered in the Bloomington area and traced back to the CBS plant and six sites around Bloomington. The United States, the State of Indiana, Monroe County, and the City of Bloomington filed what we call the enforcement action under CERCLA to make CBS clean up the sites. The enforcement action seemed to be resolved in 1985 with a consent decree requiring CBS to dig up all PCB-contaminated materials at all six sites (down to bedrock, if necessary) and to destroy them in a high-temperature incinerator. But the Indiana legislature blocked construction of the incinerator, forcing the parties back to the negotiating table.

A new agreement proved elusive. The parties eventually agreed on modified remedies for three of the six sites but were unable to agree on remedies for the remaining three: Lemon Lane Landfill, Neal's Landfill, and Bennett's Dump. These three sites, which had been added to CERCLA's National Priorities List in 1983 and 1984, are the sites at issue in this appeal. To resolve their remaining disagreements, the parties worked with a special master to approach the clean-up in stages. When the parties agreed on remedies for a given stage, CBS could begin work on that stage while the parties continued to negotiate about further clean-up. Negotiating in stages thus made it possible to start cleaning up the sites before the parties had resolved all of their differences.

This process eventually resulted in three clean-up stages. Stage 1 addressed PCB contamination at the landfills. It required CBS to remove sediment from contamination hot spots at Lemon Lane Landfill and Neal's Landfill, and to clean all sediment at Bennett's Dump to "industrial standards." CBS was also required to install a clay landfill cap at all three sites that would contain any remaining contaminated sediment. Stage 1 was formalized in three slightly different Records of Decision, one for each site. The Stage 1 Records of Decision for Lemon Lane Landfill and Neal's Landfill required future remedies for groundwater and sediment contamination. The Stage 1 Record of Decision for Bennett's Dump required future monitoring to detect any remaining contamination after the required total sediment excavation was complete. CBS completed work on Stage 1 at all three sites by the end of 2000.

After CBS completed Stage 1, tests showed that PCBs had migrated into the bedrock and were still being released from the bedrock into water and sediment. Much of the geology around Bloomington consists of limestone karst, which is characterized by fissures, fractures, and conduits that can make clean-up of contaminated groundwater and bedrock extremely difficult.

CBS and the government parties eventually agreed on Stages 2 and 3, which address current and future PCB contamination of groundwater and sediment from the sites. These two stages require CBS to assume ownership and operate a water treatment plant at Lemon Lane Landfill and to modify and operate a groundwater collection and treatment system at Neal's Landfill. At Bennett's Dump, CBS must install a passive drain system to decrease water levels in rain-filled

quarry pits, and design, construct, and operate a new water treatment plant and collection trench at the site. CBS also agreed to sample domestic wells periodically at all three sites and to continue all of these activities until the concentration of PCBs in the groundwater is equal to or below EPA effluent limits for one year. Stages 2 and 3 were formalized in three Records of Decision (one per site) in 2006 and 2007. At this time, work on Stages 2 and 3 continues.

In February 2008, the United States filed in the enforcement action against CBS an agreed amendment to the 1985 consent decree that incorporated all six Records of Decision and resolved all claims and counter-claims among the United States, CBS, the State of Indiana, Monroe County, and the City of Bloomington. See *United States v. CBS Corp.*, No. 1:81-cv-448-RLY-KPF (S.D. Ind.). A public comment period followed, during which plaintiffs in this case submitted comments on the proposed amendment. In March 2009, after the comment period had ended, the United States moved the district court to enter the amendment. Plaintiffs filed a statement with the court requesting that it not approve the amendment until it had ruled on their case because the two cases presented overlapping issues. (Plaintiffs were not parties in the enforcement action, but this citizen suit and the enforcement action were temporarily consolidated for case management purposes, and plaintiffs were permitted to file statements in the enforcement action if decisions in that case would affect their case.)

After considering plaintiffs' public comments and statement, the district court approved the agreed amendment in the enforcement action. The court found that the agreed

amendment was procedurally and substantively fair, its terms were reasonable and adequate, and it was consistent with the goals and purposes of CERCLA. In particular, the district court found that the EPA had completed the functional equivalent of a remedial investigation and feasibility study ("RI/FS") for each site and that the EPA had selected remedial actions that would protect human health and the environment. The district court entered the agreed amendment in the enforcement action in July 2009.

B. *Procedural Background*

Plaintiffs originally filed this separate citizens suit under CERCLA in 2000 while work on Stage 1 was continuing.[1] The district court dismissed the lawsuit on two occasions for lack of jurisdiction, citing CERCLA § 113(h)(4)'s bar on citizen suits "where a remedial action is to be undertaken at the site." 42 U.S.C. § 9613(h)(4). We reversed on both occasions, finding that at those times any plans for future remedial action were too tentative to trigger § 113(h)(4). See *Frey I*, 270 F.3d at 1133-34; *Frey II*, 403 F.3d at 829.

Plaintiffs filed their Third Amended Complaint—now the operative complaint in this case—in July 2009. They allege that the EPA failed to complete an RI/FS or its functional equivalent prior to selecting Stages 1, 2, and 3 as required by CERCLA. Plaintiffs also claim that the EPA violated CERCLA's mandate to protect human health and the environment by adopting the

---

[1]  In 1988, Frey had filed an earlier suit that was dismissed for lack of jurisdiction pursuant to CERCLA § 113(h)(4). We affirmed the district court's dismissal. See *Schalk v. Reilly*, 900 F.2d 1091 (7th Cir. 1990).

remedial plans in Stages 1, 2, and 3. Finally, the complaint alleges that the EPA violated CERCLA's mandate that settlement agreements be entered as consent decrees. The parties filed cross-motions for summary judgment. Plaintiffs also moved to disqualify the district judge because he had ruled in the related enforcement action.

The district court held that it lacked jurisdiction over claims pertaining to Stages 2 and 3, reasoning that work on those stages was continuing, so § 113(h)(4)'s bar applied. The court then granted summary judgment for the EPA on all claims regarding Stage 1, holding that the EPA had completed the functional equivalent of an RI/FS for Stage 1 and had selected remedies for Stage 1 that were protective of human health and the environment. The court also held that plaintiffs' claim that the EPA violated CERCLA's consent decree requirement was moot because the consent decree had by then been amended. Finally, the judge declined to recuse himself because his prior ruling in the enforcement case did not stem from an extrajudicial source and thus was not a ground for recusal.

II. *Discussion*

Plaintiffs argue on appeal that § 113(h)(4)'s prohibition on judicial review does not apply to any of their claims and that the district court should have ruled on their claims regarding Stages 2 and 3. They also ask us to order summary judgment in their favor on all Stage 1 claims.[2] Plaintiffs claim that, on the

---

[2]   Plaintiffs argue in their reply brief that summary judgment for EPA should be denied on plaintiffs' Stage 1 claims because disputes of material

(continued...)

undisputed facts, the EPA did not complete the functional equivalent of an RI/FS prior to selecting Stage 1; Stage 1 violated CERCLA's mandate that remedies protect human health and the environment; and the EPA violated CERCLA's requirement that all settlement agreements be entered as consent decrees. Plaintiffs contend that their claim about the consent decree requirement is not moot. Rather, they seek to be declared prevailing parties on that claim because their lawsuit spurred the EPA to modify the consent decree. Finally, plaintiffs maintain that the district judge should have recused himself.[3]

A. *Scope of Review*

We begin by determining the scope of our jurisdiction. Although neither party challenges our jurisdiction, we must satisfy ourselves as to our jurisdiction over a case. E.g., *Wernsing v. Thompson*, 423 F.3d 732, 743 (7th Cir. 2005). Section 113(h)(4) of CERCLA states in relevant part: "No Federal court shall have jurisdiction … to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except … (4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or

---

[2] (…continued)

fact exist. The argument was waived both because it appeared for the first time in the reply brief and because it was too cursory for us to consider. See *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012).

[3] Counsel for plaintiffs informed us at oral argument that plaintiff Sarah E. Frey had recently passed away. The appeal continues on behalf of the other plaintiffs.

remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. *Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site*." 42 U.S.C. § 9613(h)(4) (emphasis added).

Our cases interpreting § 113(h)(4) are in tension as to whether its prohibition is jurisdictional or not. *Frey I* concluded that § 113(h)(4) is substantive rather than jurisdictional, 270 F.3d at 1132–33, but did not discuss our circuit's prior holding in *North Shore Gas Co. v. Environmental Protection Agency* that § 113(h)(4) effects "the blunt withdrawal of federal jurisdiction." 930 F.2d 1239, 1244 (7th Cir. 1991). Later cases in this circuit have followed *North Shore Gas* and interpreted § 113(h)(4) as jurisdictional. See *Pollack v. U.S. Department of Defense*, 507 F.3d 522, 524–25 (7th Cir. 2007) (adopting the *North Shore Gas* interpretation of § 113(h)(4) without discussing *Frey I*); *Village of DePue v. Exxon Mobil Corp.*, 537 F.3d 775, 784 (7th Cir. 2008) (same); *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 493–94 (7th Cir. 2011) (§ 113(h) "expressly limits federal courts' subject matter jurisdiction").

Also, since *Frey I* was decided, a series of Supreme Court decisions that have generally narrowed the issues that federal courts treat as affecting subject matter jurisdiction have directed courts to take a statute at its word when it speaks in terms of jurisdiction, as § 113(h)(4) does. E.g., *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–16 (2006); see also *Reed Elsevier Inc. v. Muchnick*, 559 U.S. 154, 160–163 (2010); *Henderson v. Shinseki*, 562 U.S. ___, 131 S. Ct. 1197, 1204–05 (2011). These cases strongly suggest that § 113(h)(4) should be deemed

jurisdictional rather than substantive. See *Pakootas v. Teck Cominco Metals, Ltd.*, 646 F.3d 1214, 1219–20 (9th Cir. 2011) (declining to follow *Frey I* and holding that § 113(h)(4) is jurisdictional based on intervening Supreme Court precedent).

Having previously held in this same case that § 113(h)(4) is not jurisdictional, see *Frey I*, 270 F.3d at 1132–33, we hesitate to reverse course now and hold that § 113(h)(4) is jurisdictional after all. The distinction does not make a practical difference in this case since there is no issue as to waiver, whether the trier of fact should be a judge or jury, or whether the district court's decision would have preclusive effects. Whether jurisdictional or substantive, § 113(h)(4) bars judicial review of claims regarding ongoing site clean-ups, either because we lack jurisdiction over those claims or because they are premature. If plaintiffs' claims address ongoing clean-up at the sites, § 113(h)(4) bars review of them under either interpretation. For now we therefore follow *Frey I* in treating § 113(h)(4) as substantive rather than jurisdictional and proceed to determine which of plaintiffs' claims are barred by § 113(h)(4).

Section 113(h)(4) prevents court consideration of citizen suits under CERCLA until a remedial action is complete. *Schalk v. Reilly*, 900 F.2d 1091, 1095 (7th Cir. 1990) ("The obvious meaning of this statute is that when a remedy has been selected, no challenge to the cleanup may occur prior to the completion of the remedy."); see also *North Shore Gas*, 930 F.2d at 1244. Environmental remediation is a complex endeavor that often proceeds in stages. *Frey II*, 403 F.3d at 834. Accordingly, § 113(h)(4) prevents us from reviewing a finished stage of a broader remediation plan if the execution of the plan itself is

not yet complete. *Frey I*, 270 F.3d at 1134. On the other hand, extended monitoring and indefinite plans for future action do not suffice to trigger the bar of § 113(h)(4). *Id.* at 1133-34; *Frey II*, 403 F.3d at 834-35. For § 113(h)(4) to protect the EPA from citizen suits, the EPA must adopt an "objective referent" or "objective indicator" that future work is planned. *Frey II*, 403 F.3d at 834-35. A Record of Decision would certainly qualify as an objective referent or indicator, but less could also suffice. *Id.* at 834.

In *Frey II*, we concluded that the EPA had not provided an objective indicator that further work was planned at the sites. *Id.* at 830. Plaintiffs were therefore entitled to judicial review of their claims about Stage 1, which was at that time the only concrete action planned at the site. *Id.*[4] Since that remand, however, the EPA has filed Records of Decision for Stages 2 and 3, and work on those stages is ongoing. We must therefore confront a new question: how does § 113(h)(4) apply if, after a judicial determination that no future action was planned (so that § 113(h)(4) did not bar consideration of the citizen suit), the EPA then makes new, concrete plans to conduct further remediation at a site?

---

[4] The EPA does not seem to have argued in *Frey II* that the Stage 1 Records of Decision explicitly committed the EPA to conduct water and sediment remediation at the site and therefore were "objective indicators" of future action sufficient to trigger the bar of § 113(h)(4). Since *Frey II*, the EPA has filed Records of Decision for Stages 2 and 3, so we need not resolve whether the statements in the Stage 1 Records of Decision would have sufficed to trigger § 113(h)(4).

There are several possible answers to this question, which the text of § 113(h)(4) itself does not answer. First, we might say that the moment the EPA finalizes its new plans, § 113(h)(4) bars review of any prior remediation at the site. That interpretation, however, would have the unsettling effect of allowing a citizen suit to proceed while the EPA is considering further action but then requiring its dismissal the moment the EPA decides to act. We should avoid this winking in and out of claims if possible. This reading would also risk constraining the scope of judicial review under § 113(h)(4) to the point of rendering it almost a nullity: the EPA would be able to delay citizen suits indefinitely by proposing minor "further actions" whenever a citizen files suit, regardless of whether the further action affects the work already completed at the site. As we have said before, we should avoid converting § 113(h)(4) into "a silent prohibition on judicial review." *Frey I*, 270 F.3d at 1134; see also *Frey II*, 403 F.3d at 836; *North Shore Gas*, 930 F.2d at 1245.

We might instead say that the prior action remains subject to judicial review regardless of the EPA's new clean-up plans, but that would also create problems. If the EPA's new action is not fully distinct from the old one but rather builds upon and supplements it, we would then lack a meaningful way to review the completed action without also reviewing the new action, which § 113(h)(4) would bar until the new action were complete. That would make it difficult to escape the conclusion that despite the EPA's delay, there would be no complete action for us to review and § 113(h)(4)'s bar would apply. Under those circumstances, the prior action would seem more like a completed stage in a broader remediation plan than a

stand-alone plan ready for judicial review. See *Frey I*, 270 F.3d at 1134 (we cannot review a stage in a clean-up until the whole clean-up is complete). So, we cannot categorically conclude that the new plan does not affect judicial review of the old one because that approach would present problems if the two plans overlapped.

We think the best approach is to chart a middle path. If the EPA adopts a new remediation plan after an old plan is complete, a court remains able to review citizens' claims about the old plan that are not directly affected by the new plan. For example, when the new plan targets a different area, pollutant, or polluted medium than the old plan, a court should still be able to review most claims regarding the old plan because the two plans are largely distinct from one another. If the plans overlap, however, § 113(h)(4) prevents us from resolving claims about the old plan that are directly affected by the new plan, that is, claims about aspects of the old plan that fall within the plans' overlap. Otherwise, we would in effect be reviewing the new plan before it was complete, which we cannot do. In other words, adoption of the new plan does not affect judicial review of claims about the old plan unless the two plans overlap, and only to the extent that they do so.

For example, if the old remedial plan addressed soil and water contamination at a site and the new plan addressed only soil contamination at the same site, a court would be able to review claims pertaining to the old plan's water remedies but would not be able to review claims about the old plan's soil remedies. If the old plan addressed soil contamination and the new plan addressed water contamination, then we should be able to examine claims about the old plan's soil remedies

without worrying about the new plan at all. Finally, if the old plan addressed soil contamination and the new plan addressed soil and water contamination, then we could not review any claims about the old plan's soil remedies because the new plan also addressed soil contamination.

We recognize that these lines may turn out to be difficult to draw in practice. But there is no entirely satisfactory solution to the problem of later remedial actions supplementing prior work at a site, especially one that preserves an appropriate and effective role for judicial review through citizen suits. We think this approach creates the most workable solution. It is consistent with the language of § 113(h)(4) and our past decisions interpreting that language. It also strikes a reasonable balance between citizens' right to meaningful judicial review of their claims and the EPA's interest in being able to clean up sites without being delayed by citizen suits.

Turning to the facts before us, the district court correctly concluded that it could not review the ongoing work of Stages 2 and 3 but could review at least some claims about Stage 1. The remedial work of Stages 2 and 3 is ongoing, so § 113(h)(4) bars review at this time. The delay in reviewing plaintiffs' claims about Stages 2 and 3 is a necessary consequence of the § 113(h)(4) bar on judicial review of a remedial action until that action is complete. The district court correctly declined to consider plaintiffs' claims regarding Stages 2 and 3, and we do not discuss those claims further.

B. *Stage 1*

The remedial work of Stage 1, on the other hand, is complete, so we can review plaintiffs' claims about Stage 1 that

are not directly affected by Stages 2 and 3. Plaintiffs raise three such claims about Stage 1 on appeal. First, they argue that the EPA failed to prepare the functional equivalent of a remedial investigation and feasibility study ("RI/FS") before selecting the Stage 1 remedies as required by CERCLA because the EPA did not consider whether Stage 1 would stop all PCB releases into the environment. Second, plaintiffs argue that selecting Stage 1 violated CERCLA's mandate to protect human health and the environment because Stage 1 did not stop all releases of PCBs into the environment. Finally, plaintiffs argue that the EPA violated CERCLA's mandate that all agreements with parties be entered as consent decrees in the district court because the EPA did not modify the consent decree before implementing Stage 1.

Our review of the EPA's actions is limited. What is now § 310 of CERCLA permits citizen suits against the EPA only if they allege a failure to perform an act or duty under CERCLA "which is not discretionary." 42 U.S.C. § 9659(a)(2). The Supreme Court has interpreted identical language in the Endangered Species Act citizen suit provision to allow review only of whether the EPA followed required decision-making procedures. See *Bennett v. Spear*, 520 U.S. 154, 172 (1997); see also *Scott v. City of Hammond*, 741 F.2d 992, 995 (7th Cir. 1984) (interpreting identical language in the Clean Water Act the same way). The substance of the EPA's decisions, on the other hand, is at least partly discretionary, and therefore beyond the scope of these citizen suit provisions. *Scott*, 741 F.2d at 995 (applying citizen suit provision of Clean Water Act). The scope of judicial review under these provisions is therefore much narrower than the scope of judicial review under the

Administrative Procedure Act, which allows judicial review of the substance of an agency's action under a deferential abuse-of-discretion standard. See *Scott*, 741 F.2d at 995; *Little Company of Mary Hospital v. Sebelius*, 587 F.3d 849, 853 (7th Cir. 2009) (discussing the deferential standard of review under the Administrative Procedure Act).

Plaintiffs have not argued that § 310(a)(2) should be interpreted differently from the citizen suit provisions in the Endangered Species Act and Clean Water Act, and we see no reason to do so. We thus read CERCLA's citizen suit provision to allow review of claims regarding whether the EPA complied with required procedures under CERCLA, but not claims regarding the substance of the EPA's decisions, which is a matter of discretion for the agency.

Given these constraints on our review, we must make sure that plaintiffs' claims are within the scope of § 310(a)(2) before analyzing them further. We agree with plaintiffs that the EPA had a non-discretionary duty to prepare the functional equivalent of an RI/FS for Stage 1. See 42 U.S.C. § 9616 (requiring commencement of RI/FS for pre-1986 National Priorities List sites); 40 C.F.R. § 300.430 (detailed requirements of an RI/FS); see also *Frey v. Environmental Protection Agency*, 2006 WL 2849715, at *3–*5 (S.D. Ind. Sept. 29, 2006) (the RI/FS is the functional equivalent of the Environmental Impact Statement required by NEPA, so the RI/FS must be mandatory). We therefore can review whether the EPA

completed the necessary components of an RI/FS.[5] We also agree with plaintiffs that the EPA had a non-discretionary duty to select remedial actions that are protective of human health and the environment, 42 U.S.C. § 9621(b)(1), but again, we can review only whether the EPA determined that, in its estimation, Stage 1 was protective of human health and the environment. Finally, the EPA has a non-discretionary duty to enter party agreements as consent decrees in the district court, 42 U.S.C. § 9622(d)(1)(A), so we are free to review whether it did so.

We proceed to this limited review of the merits. We agree with the district court that the undisputed facts show that the EPA completed the functional equivalent of an RI/FS prior to selecting Stage 1. Contrary to plaintiffs' assertions, the EPA did consider whether Stage 1, standing alone, would stop all PCB releases from the sites into the environment. It concluded that Stage 1 would significantly improve soil quality at the sites but that further remediation of the contaminated groundwater and sediment would be needed. In other words, the EPA considered Stage 1 to be a good first step toward preventing all PCB releases into the environment from the sites and explained

---

[5] The EPA argues that it did not have to prepare the functional equivalent of an RI/FS for Stage 1 because the 1985 consent decree was adopted before the RI/FS requirement was added to the statute. However, Stage 1 was selected and the amendment to the consent decree was approved long after the RI/FS requirement was added in 1986. CERCLA subjects clean-up sites to the RI/FS requirement even if they were added to the National Priorities List before the requirement was enacted, see 42 U.S.C. § 9616(d), so the Bloomington sites were not somehow grandfathered out of the RI/FS requirement.

that future steps would be needed to solve the problem fully. The RI/FS regulations did not require more. See 40 C.F.R. § 300.430; *Frey II*, 403 F.3d at 834 (recognizing that site clean-up often proceeds in stages).

The EPA also determined that Stage 1 was protective of human health and the environment. Again, our review of that determination is deferential. It is clear that the EPA made the required determination. Here, the EPA concluded that Stage 1 was protective of human health and the environment because it would reduce PCB contamination at the sites. That determination is sufficient to comply with CERCLA's mandate, and plaintiffs' challenge accordingly fails. To the extent that plaintiffs argue that the EPA did not protect human health and the environment because it did not select the most protective remedy, we note that the EPA is not required to do so. In fact, the EPA is explicitly directed to consider other factors, including cost, when selecting a remedy. 42 U.S.C. § 9621(b)(1).

Finally, plaintiffs' claim that the EPA violated CERCLA's consent decree requirement is moot. Plaintiffs' complaint asked the court to make the EPA amend the 1985 consent decree. The EPA has now filed and the district court has approved an amendment to the consent decree that incorporates all of the Records of Decision for each site. The court could no longer provide meaningful relief, so plaintiffs' claim is moot. See *Cornucopia Institute v. U.S. Department of Agriculture*, 560 F.3d 673, 676 (7th Cir. 2009).

Plaintiffs argue that rather than declaring their claim moot, we should find them to be prevailing parties and award attorney fees because the EPA amended the consent decree in

response to their lawsuit. However, the Supreme Court has rejected this "catalyst theory" for most federal statutes that award attorney fees to prevailing parties. *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 605 (2001); *Walker v. Calumet City*, 565 F.3d 1031, 1033–34 (7th Cir. 2009). *Buckhannon* held that a plaintiff does not become a prevailing party when her lawsuit brings about a voluntary change in the defendant's conduct without a court order that materially alters the legal relationship between the parties. *Id.*

This circuit has adopted "a strong presumption that *Buckhannon* applies to each fee-shifting statute that awards fees to 'prevailing parties.'" *T.D. v. LaGrange School District No. 102*, 349 F.3d 469, 475 (7th Cir. 2003). For *Buckhannon* not to apply, the text, structure or legislative history of a particular statute must clearly indicate a different definition of "prevailing party." *Id*. Nothing in the text, structure, or legislative history of CERCLA clearly indicates that we should interpret its fee-shifting provision differently from that in *Buckhannon,* so we see no reason why it should not apply here. See *City of Waukesha v. PDQ Food Stores, Inc.*, 500 F. Supp. 2d 1119, 1122 (E.D. Wisc. 2007) (applying *Buckhannon* to CERCLA's fee-shifting provision); Lucia A. Silecchia, The Catalyst Calamity: Post-*Buckhannon* Fee-Shifting in Environmental Litigation and a Proposal for Congressional Action, 29 Colum. J. Envtl. L. 1 (2004) (assuming *Buckhannon* applies to fee-shifting under CERCLA and calling for legislation).

Applying the *Buckhannon* definition of "prevailing party," plaintiffs' claim for attorney fees fails. Plaintiffs' lawsuit did

not result in a court-ordered change in the legal relationship between the plaintiffs and the EPA. Even if we accept plaintiffs' contention that the EPA amended the 1985 consent decree in response to their lawsuit, plaintiffs were not parties to the enforcement action, so the decree did not change their legal relationship with the EPA. Plaintiffs' claim regarding the consent decree is therefore moot, and they are not prevailing parties on that claim.

C.  *Recusal*

Finally, plaintiffs argue that the district judge should have recused himself from this citizen suit because he had ruled on similar issues in the enforcement action and was therefore biased against them. The argument has no merit. For starters, the enforcement action addressed similar issues because plaintiffs inserted those issues into the enforcement action through both the public comment process and their statement to the court. Plaintiffs' attempts to cast their participation in the public comment period and enforcement action and the judge's consideration of their views in resolving the enforcement action as a due process violation are not at all persuasive. Second, and more fundamental, information a judge has gleaned from prior judicial proceedings is not considered extrajudicial and simply does not require recusal. See *United States v. Barnes*, 909 F.2d 1059, 1072 (7th Cir. 1990) (alleged bias caused by past cases involving the judge and moving party were not grounds for recusal); *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990) (extrajudicial bias cannot come from the judge's prior involvement in related cases).

Judges frequently preside over related cases, including successive appeals and remands between the same parties. This common practice does not violate the Due Process Clauses of the Fifth or Fourteenth Amendments. See, e.g., *Withrow v. Larkin*, 421 U.S. 35, 48–49 (1975), quoting *FTC v. Cement Institute*, 333 U.S. 683, 702–03 (1948). Finally, plaintiffs point to no evidence that the district judge displayed "deep-seated bias or antagonism that would make fair judgment impossible," as required to justify recusal for bias under 28 U.S.C. § 455. *Liteky v. United States*, 510 U.S. 540, 555 (1994). Simply put, there is no reason the district judge should have recused himself from this case. His decision not to do so did not deny plaintiffs due process of law.

The judgment of the district court dismissing this action is AFFIRMED in all respects.